MOORE ET AL., APPELLANTS, *v.* CITY OF MIDDLETOWN, APPELLEE.

[Cite as *Moore v. Middletown,* 133 Ohio St.3d 55, 2012-Ohio-3897.]

*Declaratory judgments—Zoning—Standing—Owner of property adjacent to property rezoned by foreign municipality has standing to bring declaratory-judgment action to challenge constitutionality of zoning if owner pleads injury caused by rezoning that is likely to be redressed.*

(No. 2010-1363—Submitted September 6, 2011—Decided August 30, 2012.)

APPEAL from the Court of Appeals for Butler County,

No. CA2009-08-205, 2010-Ohio-2962.

_____

SYLLABUS OF THE COURT

Property owners whose property is adjacent to property rezoned by a foreign municipality may use a declaratory-judgment action to challenge the constitutionality of the zoning action if the owner pleads that he has suffered an injury caused by the rezoning that is likely to be redressed.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we return to territory recently visited in *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414. There, we held that property owners asserting a regulatory-taking claim lack standing to bring a mandamus action against a municipality to compel appropriation when the affected property is outside the municipality's corporate limits. *Id.* at ¶ 24 and 29.

{¶ 2} In this appeal, we are presented with a more complex question. The appellants here are property owners who allege that a foreign municipality rezoned land that lies in the municipality, but that is also adjacent to their property in another municipality, for the benefit of private enterprise rather than public

health. They allege violations of due process and equal protection, as well as a regulatory taking for which they are entitled to compensation.

{¶ 3} Consistent with our decision in *Clifton*, we hold that the property owners do not have standing to bring a mandamus action to compel a municipality to appropriate property outside the municipality's jurisdiction. But, for the reasons that follow, we hold that the property owners do have standing to bring a declaratory-judgment action to challenge the constitutionality of the ordinances. Accordingly, we affirm in part, reverse in part, and remand to the trial court for additional proceedings consistent with this decision.

### RELEVANT BACKGROUND

{¶ 4} Because the claims were resolved on motions to dismiss for lack of standing and failure to state a claim upon which relief can be granted, we accept as true all material allegations in the appellants' complaint and construe all reasonable inferences in their favor. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶ 5} Appellants, Lori A. and Matthew E. Moore ("the property owners"), own property in Monroe, Ohio, that is adjacent to a parcel of property that lies wholly in Middletown, Ohio. The Middletown property, known as the Martin-Bake property, is central to this appeal.

{¶ 6} The Martin-Bake property includes 157 acres of land. Before August 2008, the Martin-Bake property was zoned only for low-density residential use. Although one side of the parcel abuts space zoned for industrial use, the Martin-Bake property is largely bordered by nonindustrial properties, such as residential housing, a church, a school, and a nursing facility. But through two enactments, Ordinance No. 02008-63 and Ordinance No. 02008-64, Middletown rezoned the Martin-Bake property into a general industrial zone and revised a setback provision that had required all industrial activities to be 600 feet

from the property line, eliminating that requirement for activities that are "incidental or ancillary" to the manufacturing process. By doing so, Middletown permitted the Martin-Bake property to be transformed dramatically.

{¶ 7} A general industrial zone in Middletown, called an "I-2 District," is "intended to accommodate those industrial uses which cannot entirely eliminate certain objectionable features and influences, but which must, nevertheless, be accommodated within the urban area." Middletown Zoning Code 1258.01. As an I-2 District, the Martin-Bake property could be used for a wide array of pursuits, including the manufacturing, compounding, processing, packaging, or assembly of electric and gas appliances, as well as the manufacturing of acid, asphalt, bleach, concrete, helium, hydrogen, insecticides, lye, oxygen, "poison of any kind," radium, "soda ash or caustic soda or similar chemical products," fuel briquettes, fertilizers, gelatin, animal glue, turpentine, rubber, and soap. Middletown Zoning Code 1258.02(b)(1), (3), (4), and (10). It also could house a foundry, junk yard, or power-generating station. Middletown Zoning Code 1258.02(b)(5) and (c)(4) and (6).

{¶ 8} The property owners, however, allege that the ordinances cleared the way for construction of a coke plant that would be owned and operated by SunCoke Energy for the benefit of AK Steel Corporation, one of Middletown's biggest employers. Ordinance No. 02008-64 makes clear that the ordinance is

> an emergency measure to make immediately available additional developable industrial land in the City, and necessary for the immediate preservation of the public health, safety and general welfare, to wit: to permit the development of a proposed project on the property which would stabilize the security of over two-thousand jobs in the City and create new jobs in the City, thereby increasing the City's tax base.

3

**{¶ 9}** Following the enactment of the ordinances, the property owners brought suit alleging that the rezoning ordinances were not for the benefit of the public, were "arbitrary, capricious, unreasonable and unconstitutional," ignored the "coke plant's close proximity to both a school and a nursing home, as well as the serious pollution produced by such [a] plant resulting in the substantial impairment of public health and safety of persons, as well as the drastic diminution in value of surrounding low intensity residentially zoned property." In addition, they alleged that Middletown had passed the ordinance as an emergency measure "for the purpose of denying citizens of Middletown who opposed such unlawful legislation the opportunity to vote on such action pursuant to referendum."

**{¶ 10}** The complaint sought both a declaratory judgment and a writ of mandamus. The property owners requested a declaration that the ordinances are arbitrary, capricious, and unconstitutional and violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 16. In their request for a writ of mandamus, they claimed that Middletown's action constituted a taking of their private property and unlawfully deprived them of "property rights consistent with their investment backed expectations," and entitled them to compensation for the taking. Thus, they claimed, Middletown had a clear legal duty to commence appropriation proceedings pursuant to R.C. Chapter 163.

**{¶ 11}** Middletown moved to dismiss pursuant to Civ.R. 12(B)(1) and (6), asserting that the appellants lacked standing to bring their claims, that they failed to state claims upon which relief could be granted, and that the common pleas court lacked jurisdiction over the claims. After briefing and a hearing, the trial court granted the motion.

4

{¶ 12} On the issue of standing, the trial court ruled that R.C. 2721.03 confers standing on the property owners to bring a declaratory-judgment action because they are persons affected by the municipal ordinance. Notably, the trial court expressly rejected Middletown's assertion that the property owners lacked standing to bring their due process and equal protection claims against Middletown because their property is in Monroe. It wrote, "this Court does not find that a jurisdictional boundary extinguishes Plaintiffs' standing to bring the instant action. In the present case, the Plaintiffs have alleged a legally protected interest in the rezoning of the Martin-Bake property."

{¶ 13} Instead, the trial court held that the property owners' claims failed because although they "make a broad allegation that Defendant's zoning is unconstitutional as it has no relation to the health, safety or welfare of the City of Middletown," they had not alleged sufficient facts to overcome the presumption that the ordinances are constitutional. Thus, the court concluded that they failed to state a claim upon which relief could be granted.

{¶ 14} Turning to the takings claim, the court held that the claim must fail because the regulation was not directed at the property owners' property, and thus no regulation burdened that property. And it held that even if there had been a taking, mandamus to appropriate the land was unavailable as a matter of law because Middletown could not appropriate land outside its jurisdictional limits.

{¶ 15} On the property owners' appeal, the court of appeals heard arguments and then ordered supplemental briefs on the issue of standing. *Moore v. Middletown*, 12th Dist. No. CA2009-08-205, 2010-Ohio-2962. A divided panel affirmed the trial court's ruling. In so doing, however, it held that the property owners lacked standing to bring their claims, without distinguishing between the declaratory-judgment and mandamus claims. The court of appeals recognized that the complaint was both for a declaratory judgment and a writ of mandamus, but decided the standing issue based solely on R.C. 2721.03, which, the court

held, merely represents a legislative grant of jurisdiction to Ohio courts to hear declaratory-judgment actions. Whether a particular party has standing to sue is a separate question not answered by the statute. The court held that a nonresident contiguous property owner has no standing to bring an action against an adjacent political subdivision seeking compensation for rezoning property located solely within the political subdivision's boundaries.

{¶ 16} Because of its broad holding that there was no standing, the court of appeals recognized that it did not need to reach any other issue in the appeal. But it nevertheless proceeded, ultimately holding that dismissal was proper even if the property owners had standing. With respect to the due process and equal protection claims, it relied on the property owners' allegation that the ordinances had been enacted for the benefit of AK Steel Corporation. The court characterized that allegation as an "admission that the ordinances were passed for the benefit of one of Middletown's most prominent employers," which in turn was a basis for finding that the ordinances were not arbitrary, capricious, or unreasonable. *Id.* at ¶ 19.

{¶ 17} It then held that no regulatory taking had occurred because the property owners alleged only a diminution in value of their property. And like the trial court, it held that a municipality cannot appropriate property beyond its jurisdictional boundary. It concluded that even if the property owners had standing, the court did not err in dismissing their complaint because they failed to state claims upon which relief can be granted.

{¶ 18} We accepted the property owners' discretionary appeal soon after accepting the discretionary appeal in *Clifton*. See *Moore v. Middletown*, 126 Ohio St.3d 1616, 2010-Ohio-5101, 935 N.E.2d 854; *Clifton v. Blanchester,* 126 Ohio St.3d 1597, 2010-Ohio-4928, 935 N.E.2d 44.

{¶ 19} We adhere to our holding in *Clifton* and affirm the appellate court's conclusion that the property owners lack standing to assert a mandamus

claim for appropriation of land outside the territorial limits of a municipality. But that holding does not control the analysis of the property owners' other constitutional claims. For the reasons that follow, we hold that they do have standing to assert the due process and equal protection claims in the declaratory-judgment action and, accordingly, reverse the portion of the appellate court's judgment that held otherwise. We remand this cause to the trial court for further proceedings.

## ANALYSIS

### *Standing Generally*

{¶ 20} Standing determines " 'whether a litigant is entitled to have a court determine the merits of the issues presented.' " *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.,* 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 10, quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). Whether a party has established standing to bring an action before the court is a question of law, which we review de novo. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶ 21} In *Clifton*, we set forth Ohio's general law on standing:

"It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062. " 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004) 1442. " ' "[T]he question of

standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy * * *' as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' " ' " Id., quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636, quoting *Baker v. Carr* (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, and *Flast v. Cohen* (1968), 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947.

*Clifton,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15.

{¶ 22} To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These three factors—injury, causation, and redressability—constitute "the irreducible constitutional minimum of standing." *Id*. at 560; *see also Sheward,* 86 Ohio St.3d at 469-470, 715 N.E.2d 1062.

{¶ 23} It is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim asserted by the plaintiffs. *Warth*, 422 U.S. at 500, 95 S.Ct. 2197, 45 L.Ed.2d 343. We therefore move from the law of standing generally to the law of standing that is specific to the property owners' claims.

### *Standing for Regulatory Takings*

**{¶ 24}** We first address the property owners' standing to bring a mandamus action to compel Middletown to appropriate their land and compensate them for it.

**{¶ 25}** As we recognized in *Clifton,* "In the context of the regulatory-taking jurisprudence, whether a regulation constitutes a taking depends in large part upon the degree to which the regulation burdens private property." *Id.,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 19. The greater the burden a regulation imposes upon private property, the more likely it is that the regulation will constitute a regulatory taking. *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.,* 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 17. If the burden the zoning imposes becomes too great, a total taking may occur. *See, e.g., State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320.

**{¶ 26}** But in order to establish standing to make a regulatory-taking claim, the plaintiff bears a heightened burden. As the Supreme Court explains,

> When * * * a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct.

2037, 104 L.Ed.2d 696 (1989) * * *, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. *Allen* [*v. Wright*]*,* 468 U.S. [737], 758, 104 S.Ct. [3315, 82 L.Ed.2d 556 (1984)].

*Lujan,* 504 U.S. at 561-562, 112 S.Ct. 2130, 119 L.Ed.2d 351.

{¶ 27} Under this "substantially more difficult" standard, causation and redressability are critical, if not dispositive, determinations. For example, in *Clifton*, we intimated that the property owner had not sufficiently alleged causation. *See Clifton*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, at ¶ 31. But essential to our holding was the fact that the property owner could not establish that his mandamus claim would provide him with redress for any injury he suffered, because Ohio law holds that a municipality has no authority to appropriate property outside its jurisdictional limits. *Id.* at ¶ 29; *Britt v. Columbus*, 38 Ohio St.2d 1, 309 N.E.2d 412 (1974), paragraph one of the syllabus (holding that there is no power of eminent domain beyond the geographical limits of the municipality under the Ohio Constitution, Article XVIII, Section 3). Thus, we held that the property owner could not establish redressability, and in turn, standing. *Clifton* at ¶ 27-29, 32.

{¶ 28} On the authority of *Clifton*, we affirm the portion of the appellate court's judgment holding that the property owners in this cause have no standing to bring their partial takings claim because mandamus will not lie to compel Middletown to appropriate property in Monroe. *Britt.* But the court of appeals

10

was far too expansive in holding that *Clifton* controlled all of the property owners' claims. It does not.

{¶ 29} In fact, we expressly cautioned in *Clifton* that the decision should not be construed too broadly beyond the facts and posture of that case. As we said in concluding that opinion:

> Applying our holding to the facts of this case, we conclude that Clifton lacks standing to bring a takings claim against the village. However, we emphasize that we do not hold that an adjoining property owner may never have standing. Instead, we hold that a property owner lacks standing under the facts and circumstances presented here. The zoning at issue applies to J&M's property, not Clifton's. Therefore, the zoning imposes no limitation on Clifton's use of his property whatsoever. Further, the alleged diminution in value of Clifton's property is not a direct result of the village's zoning, but instead is caused by J&M's use of its property, as allowed by the rezoning. Finally, the rezoning that changed part of J&M's property from "business industrial" to "general industrial" merely expanded a similar, existing, permitted use. Under these particular facts, we hold that there is an insufficient nexus between the rezoning of J&M's property and the alleged diminution in value of Clifton's adjacent property to indicate that Clifton is a proper party to bring a regulatory-taking claim.
>
> Furthermore, because Clifton's property is outside the village limits, the village has no authority to appropriate his property for an alleged regulatory taking. Accordingly, Clifton also has no redressable claim against the village for a regulatory taking.

*Clifton*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, at ¶ 30-32.

{¶ 30} Despite the breadth of wording in *Clifton's* syllabus, we make clear that that decision does not stand for the proposition that a property owner always lacks standing to bring a mandamus claim against a municipality when the affected property is outside the municipality's corporate limits. Rather, *Clifton* must be understood in conjunction with the unique facts and circumstances upon which it rests, *see State ex rel. Shelly Materials v. Clark Cty. Bd. of Commrs.,* 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 28-29, including the fact that it was a mandamus claim against a foreign municipality by a property owner who attempted to challenge the rezoning of contiguous land from one industrial use to another.

{¶ 31} Having clarified the scope of *Clifton*, we hold that it applies in full force to the mandamus portion of the property owners' complaint (count two), which seeks a writ to compel Middletown to appropriate property in Monroe and compensation for the appropriation. Accordingly, we affirm the portion of the appellate court's holding that held that the property owners lacked standing to bring that claim.

{¶ 32} But as set forth below, there are critical differences between *Clifton* and the property owners' other constitutional claims. We hold that those claims are not foreclosed on standing grounds.

### *Standing to Challenge Zoning Decisions*

{¶ 33} Our precedent already makes clear that when a municipality rezones a property, the owner of the adjacent property has standing to challenge the constitutionality of the zoning decision if the property owner lives in the municipality.

{¶ 34} In *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 179, 743 N.E.2d 894 (2001), we held that a

plaintiff whose property was adjacent to property that had been rezoned to permit a fireworks manufacturer to construct a large building was an aggrieved person within the meaning of R.C. 519.15 and thus had standing to appeal the township's decision to permit construction. There, a township zoning inspector issued Midwest Fireworks a zoning certificate permitting it to build a new structure on a site that had been destroyed by a fire 15 years earlier. *Id.* at 175-176. The owner of the property directly across a two-lane highway from Midwest Fireworks' property appealed to the board of zoning appeals, which ruled in his favor and revoked the certificate. *Id.* at 176. Midwest Fireworks appealed to the court of common pleas, which affirmed. *Id.* But the court of appeals subsequently reversed that decision, reasoning that the property owner did not have standing. *Id.* at 176-177. We disagreed and concluded that the risks inherent in the business created a real and serious threat to property and persons, including the property owner, and that he thus was an aggrieved person within the meaning of R.C. 519.15 and had standing to appeal the township's decision. *Id.* at 178-179.

{¶ 35} We recognize that *Midwest Fireworks* concerned an administrative appeal rather than a declaratory-judgment action. But either vehicle is an appropriate means to challenge a zoning resolution, and we find its rationale instructive in cases in which property owners allege that their rights are adversely affected by a zoning ordinance targeting adjacent property. *See Joseph Airport Toyota, Inc. v. Vandalia,* 2d Dist. No. 18904, 2002 WL 313158 (Mar. 1, 2002).

{¶ 36} In so holding, we are particularly cognizant of the fundamental rights at issue in property-use cases.

{¶ 37} The rights to acquire, use, enjoy, and dispose of property are among the most revered in our nation's law and traditions and are integral to our theory of democracy and notions of liberty. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34.

> [T]he founders of our state expressly incorporated individual property rights into the Ohio Constitution in terms that reinforced the sacrosanct nature of the individual's "inalienable" property rights, Section 1, Article I, which are to be held forever "inviolate." Section 19, Article I.

(Footnote omitted.) *Id.* at ¶ 37.

{¶ 38} Zoning ordinances directly affect, and often limit, property owners' rights. In most cases, those limitations are proper. But it must be remembered that a government's authority to intrude on the individual's right to property by enacting zoning ordinances is predicated on the proper use of police powers, for the public welfare. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Property owners in Ohio therefore have the right to bring cases contesting the constitutionality of a zoning ordinance, including claims that the government action is clearly arbitrary and unreasonable and has no substantial relation to public health or safety. *Goldberg Cos., Inc. v. Richmond Hts. City Council,* 81 Ohio St.3d 207, 690 N.E.2d 510 (1998). *See also Mayfield-Dorsh, Inc. v. S. Euclid,* 68 Ohio St.2d 156, 161, 429 N.E.2d 159 (1981) ("a successful declaratory judgment challenge must demonstrate, beyond fair debate, that the zoning classification is unconstitutional, unreasonable and not substantially related to the public health, safety, morals or general welfare" ).

{¶ 39} Here, the property owners are attempting to do just that—mount a challenge to Middletown's zoning ordinance based on the property owners' belief that the ordinance rezoning the Martin-Bake property is unconstitutional (i.e., it violates their due process and equal protection rights), unreasonable, and not substantially related to the public health, safety, morals, or general welfare. The

question before us in this appeal is whether they have *standing* to do so, not whether they will succeed in their efforts.[1]

**{¶ 40}** In so holding, our touchstone is respect for the revered constitutional principles that protect the people's rights to acquire, enjoy, use, and dispose of property. Courts honor the people and their Constitution by giving careful consideration to property owners' challenges to the propriety of government actions that affect their property. We will not limit property owners' standing to raise constitutional claims simply because our law prevents them from raising a takings claim or because they face a difficult battle in marshalling sufficient evidence to overcome the presumption that the ordinance is constitutional.

**{¶ 41}** Our holding today comports with our understanding of the reverence for property rights in our Constitution and case law, as well as the experience and wisdom of our sister courts, which have previously reached the same issue and concluded that standing is extant.

**{¶ 42}** The seminal case on this subject, *Cresskill v. Dumont*, 15 N.J. 238, 104 A.2d 441 (1954), is particularly instructive and helpful. There, more than 50

---

1. We must indulge all reasonable inferences from the complaint in favor of the property owners. *Warth,* 422 U.S. at 501, 95 S.Ct. 2197, 45 L.Ed.2d 343. Upon reviewing the property owners' complaint, it is clear that in addition to the takings claim, the complaint asserts claims that Middletown enacted the ordinances in violation of the Due Process and Equal Protection Clauses of the federal and Ohio Constitutions and that Middletown did not enact the ordinances through the valid exercise of police power for the benefit of the public, but rather, did so for the benefit of one of its corporate community members. The dissent conflates the property owners' claims for a taking with their claims that the government acted unconstitutionally and unreasonably. It is unfairly reductionist to do so.

Although the two claims are related, they are pleaded in separate counts and governed by separate constitutional theories and separate analyses of standing.

We intimate no opinion on the validity of the property owners' assertions. We simply hold that at this preliminary stage in the proceedings, we cannot say, as a matter of law, that Middletown's boundaries shield it from *all* of the property owners' constitutional claims and that there is no constitutional theory that will ultimately afford them relief. Those questions are for another day, in another appeal, after the property owners are given an opportunity to prove their claims.

years ago, the New Jersey Supreme Court rejected the view that a municipality's responsibility for zoning halts at the municipal boundary lines. *Id.* at 247. It held that

> [at] the very least [the municipality] owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to [its own] residents and taxpayers * * *. To do less would be to make a fetish out of invisible municipal boundary lines * * *.

*Id.*

{¶ 43} *Cresskill* quickly became the dominant view and was adopted by an array of diverse state courts. *See Scott v. Indian Wells*, 6 Cal.3d 541, 99 Cal.Rptr. 745, 492 P.2d 1137 (1972) (holding that nonresident property owners had standing to challenge a conditional-use permit issued by a neighboring city because the property owners' land was adjacent to the lot subject to the conditional-use permit); *Adams Cty. Bd. of Commrs. v. Thornton*, 629 P.2d 605 (Colo.1981) (en banc) (city has standing to challenge rezoning of land adjacent to city property). *See also Hamelin v. Wallingford Zoning Bd.,* 19 Conn.Supp. 445, 117 A.2d 86 (1955); *Whittingham v. Woodridge*, 111 Ill.App.2d 147, 249 N.E.2d 332 (1969); *Koppel v. Fairway*, 189 Kan. 710, 371 P.2d 113 (1962); *Allen v. Coffel*, 488 S.W.2d 671 (Mo.App.1972); *Dahman v. Ballwin*, 483 S.W.2d 605 (Mo.App.1972); *Bagley v. Sarpy Cty.*, 189 Neb. 393, 202 N.W.2d 841 (1972); *Roselle Park v. Union Twp.*, 113 N.J.Super. 87, 272 A.2d 762 (1970). The *Cresskill* view continues to be applied by state courts. *See, e.g., Smagula v. Hooksett*, 149 N.H. 784, 789, 834 A.2d 333 (2003) ("[O]wners of property, wherever located, may contest a decision made by a municipality's zoning board

16

of adjustment or planning board so long as they have a 'sufficient interest' in the outcome"); *Provco Partners v. Limerick Twp. Zoning Hearing Bd.*, 866 A.2d 502 (Pa.Commw.2005) (holding that a municipal line has no effect on the status of a property owner as a "person aggrieved" by the treatment of property in another municipality).[2]

**{¶ 44}** The weight of authority remains in accord with *Cresskill,* and we now adopt it as well. We decline to limit standing to residents of the municipality that zoned or rezoned the land. Walls do not separate our political subdivisions. We hold that property owners whose property is adjacent to property rezoned by a foreign municipality may use a declaratory-judgment action to challenge the constitutionality of the zoning action. Several reasons compel this result.

**{¶ 45}** First, the declaratory-judgment chapter of the Revised Code broadly authorizes plaintiffs to bring actions for a declaration of "rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02. It is well settled that "[a]ctions for declaratory judgment may be predicated on constitutional or nonconstitutional grounds." *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 13. And we have previously addressed declaratory-judgment actions in which plaintiffs challenged the constitutionality of a municipality's zoning decision, including arguments that the municipality's ordinance did not establish legitimate interests. *See, e.g., Shemo v. Mayfield Hts*., 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000). *See also State ex*

---

2. The Commonwealth Court is one of Pennsylvania's two statewide intermediate appellate courts. This court, which was established in 1968, is unlike any other state court in the nation. Its jurisdiction generally is limited to legal matters involving state and local government and regulatory agencies. Litigation typically focuses on such subjects as banking, insurance and utility regulation and laws affecting taxation, land use, elections, labor practices, and workers compensation. Commonwealth Court also acts as a court of original jurisdiction, or a trial court, when lawsuits are filed by or against the Commonwealth. The Unified Judicial System of Pennsylvania, Commonwealth Court, http://www.pacourts.us/T/Commonwealth/(accessed June 12, 2012).

*rel. Shemo v. Mayfield Hts.*, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493, ¶ 1, 10. As the trial court in this case correctly recognized, " '[p]ersons whose property rights are directly affected by a statute or ordinance are entitled to obtain a declaratory determination as to the validity of the statute or ordinance.' " *Moore v. Middletown*, Butler C.P. No. CV 2008 09 4191, at 5, quoting *Wilson v. Cincinnati*, 171 Ohio St. 104, 108, 168 N.E.2d 147 (1960). We agree.

{¶ 46} In so holding, we observe that "[a] primary purpose of the declaratory-judgment action is to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively." *Ohio Farmers Indemn. Co. v. Chames*, 170 Ohio St. 209, 213, 163 N.E.2d 367 (1959). It is in the interest of all parties, as well as the public, that zoning decisions are resolved as expeditiously as possible.

{¶ 47} Second, and judges are cautioned to remember, standing is not a technical rule intended to keep aggrieved parties out of court. " 'Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.' " *Fort Trumbull Conservancy, L.L.C. v. Alves,* 262 Conn. 480, 486, 815 A.2d 1188 (2003), quoting *Maloney v. Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981). Here, we cannot say that those principles were honored.

{¶ 48} The court of appeals in this case asserted that R.C. 2721.03 merely represents a legislative grant of jurisdiction to Ohio courts to hear declaratory-judgment actions and that the statute does not answer the separate question of whether the plaintiff has standing to sue. Although it is true that R.C. Chapter 2721 is the legislative source of a cause of action for declaratory relief, we do not

necessarily agree that the statute does not confer standing.[3] Indeed, standing can be created by legislation. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986). But aside from whether the statute itself confers standing, our cases make clear that we are generous in considering whether a party has standing.

**{¶ 49}** Our precedent also makes clear that declaratory relief is available to a plaintiff who can show that (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties. *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 511, 584 N.E.2d 704 (1992); *Burger Brewing Co. v. Ohio Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973). Courts have the duty to ensure that plaintiffs plead these elements for purposes of declaratory-judgment actions and that the complaint sufficiently avers injury, causation, and redressability. Thus, our generosity is tempered by an insistence on sufficiency in the pleadings. If a party fails to establish any of the necessary showings to bring the claims, the judge must dismiss the cause.

---

3. In *Aarti Hospitality,* a case upon which the appellate court here relied heavily, there is no suggestion that standing was conferred or lost by operation of the declaratory-judgment law. *Aarti Hospitality, L.L.C. v. Grove City*, 486 F.Supp.2d 696 (S.D.Ohio 2007). Rather, the case turned on whether the plaintiffs—corporate taxpayers who challenged a tax abatement program for hotels—demonstrated that they had suffered a cognizable injury. That court properly noted that the declaratory- judgment statute created the right to bring the action, but did not "create the appropriate plaintiff." *Id.* at 700, citing *Walgash v. Monclova Twp. Bd. of Trustees,* 6th Dist. No. L-80-105, 1981 WL 5518, *4 ("While R.C. 2721.03 creates the right to bring a declaratory-judgment action to determine the validity of an ordinance, the requirements of justiciability, including standing and ripeness, must still be met before a court can entertain the action"). The court ultimately denied standing to the plaintiffs in *Aarti Hospitality* because it found that the only alleged injury upon which they relied—that the tax abatement gave Aarti a grossly unfair competitive advantage in the local hotel market—was insufficient as a matter of law. Because no injury was alleged, there was no standing. Nothing we have said here, or in *Clifton*, is to the contrary.

**{¶ 50}** Judges begin with the presumption that a zoning ordinance is constitutional. *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 583-584, 653 N.E.2d 639 (1995). But that presumption is rebuttable.

**{¶ 51}** "The Courts of this country have been extremely zealous in preventing the constitutional rights of citizens being frittered away by regulations passed by virtue of the police power." *Cincinnati v. Correll*, 141 Ohio St. 535, 539, 49 N.E.2d 412 (1943).

> Respecting, as we do, the legislative authority of the city council and its right to determine what ordinances shall be passed, yet when an act of such body is challenged we must determine whether the act conforms to rules of fundamental law designed to curb and check the unwarranted exercise of unreasonable and arbitrary power.

*Id.* at 540.

**{¶ 52}** If a property owner challenging the ordinance proves, beyond fair debate, that the ordinance is "clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community," the court must declare the ordinance unconstitutional. *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207, 214, 690 N.E.2d 510 (1998). "Where the amendment of a zoning ordinance is clearly an arbitrary and unreasonable action on the part of the city council and not authorized or contemplated by the zoning statute, it is of no force and effect." *Clifton Hills Realty Co. v. Cincinnati*, 60 Ohio App. 443, 450, 21 N.E.2d 993 (1938), citing *Michigan-Lake Bldg. Corp. v. Hamilton,* 340 Ill. 284, 172 N.E. 710 (1930). And

> [i]f the landowner has challenged the constitutionality of zoning and also alleged that it constitutes a taking of the property, the case is terminated if the zoning is found to be unconstitutional, because the landowner is free of the zoning that restricted the use of the land.

*Goldberg Cos.* at 213.

**{¶ 53}** Thus, the property owners clearly have the potential for a remedy separate and apart from mandamus relief. Because they have a potential remedy, the dissent is mistaken in its conclusion that the property owners cannot establish sufficient redressability to have standing to bring their claims.

**{¶ 54}** The trial court properly found that the allegations of the complaint based on equal protection and due process theories pleaded a real, justiciable controversy over zoning regulations enacted by Middletown that affected the plaintiffs' rights within the meaning of R.C. 2721.03. As our opinion makes clear, the property owners cannot succeed in a mandamus claim. But we also make clear that it is too soon to tell whether their other constitutional claims are viable.

**{¶ 55}** In so holding, we intimate no opinion on the merits of the property owners' due process, equal protection, and police-power claims. We simply hold that the property owners have a right to pursue discovery on those claims. If they are not able to marshal facts to support their theories, summary judgment—not a motion to dismiss for failure to state a claim—is an appropriate way to resolve the declaratory-judgment action in an efficient, fair manner. We therefore reverse the judgment of the court of appeals to the extent that it held that the property owners did not establish standing to bring their due process and equal protection claims.

*Conclusion*

**{¶ 56}** We hold that property owners whose property is adjacent to property rezoned by a foreign municipality may use a declaratory-judgment action to challenge the constitutionality of the zoning action if the owner pleads that he has suffered an injury caused by the rezoning that is likely to be redressed.

**{¶ 57}** Accordingly, we affirm the judgment of the court of appeals in part and reverse it in part, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PFEIFER, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., concur in part and dissent in part.

_____

**LANZINGER, J., concurring in part and dissenting in part.**

**{¶ 58}** I concur in judgment in part with respect to holding that property owners do not have standing to bring a mandamus action to compel a municipality to appropriate property outside the municipality's jurisdiction. But I dissent from the majority's creation of new law in holding that the nonresident property owners in this case have standing to bring a declaratory-judgment action to challenge another municipality's ordinances on due process and equal protection grounds. I disagree with the majority's conclusion that these constitutional claims survive.

**{¶ 59}** It is difficult to see how the majority can hold that the Moores have standing to challenge ordinances by way of a declaratory-judgment action when the majority also holds that there has been no taking, i.e., no injury that may be redressed. In disposing of the claim for a writ of mandamus, the majority follows

the principle that "[a] property owner lacks standing to bring a regulatory-taking claim against a municipality when the affected property is outside the municipality's corporate limits." *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, syllabus. *Clifton* thus prohibits use of a mandamus action to force Middletown to undertake proceedings to compensate the Moores for an appropriation of their property. Although the majority holds that there can be no taking under the rule of *Clifton*, it permits nonresidents' use of a declaratory-judgment action to challenge the constitutionality of ordinances of another municipality.

{¶ 60} The issue of standing turns on the nature and source of the claim asserted by the plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The first cause of action of the complaint sets forth the constitutional claims regarding the ordinance:

> For its First Cause of Action, Plaintiffs/Relators state that the CITY OF MIDDLETOWN's action in the rezoning of the Martin/Bake property was arbitrary, capricious, unreasonable, and unconstitutional as applied to said property, having no substantial relation to, nor the substantial advancement of, the public health, safety, and welfare of said City, and that the effect of such action upon Plaintiffs/Relators' property violates the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I Section 16 of the Ohio Constitution.

{¶ 61} With regard to this cause of action, the Moores asked that

23

the Court render declaratory judgment declaring that the CITY OF MIDDLETOWN's rezoning of the Martin/Bake property and the amendment of the setback ordinance are arbitrary, unreasonable and unconstitutional as applied to Plaintiffs/Relators' property, having no substantial relation to public health, safety and welfare.

{¶ 62} "A declaratory judgment action lies when a party challenges a zoning ordinance as it applies to a specific parcel of property to proscribe the owner's proposed use of the property." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 16, 526 N.E.2d 1350 (1988). "The overall constitutionality of a zoning ordinance as applied to a particular parcel of property is the central question." *Id*. Here, the Moores have not alleged that the rezoning and setback ordinances were directed to their property, and thus they lack standing to challenge them. At most, the Moores have pled a potential diminishment in the value of their property as a result of Middletown's rezoning. The majority cites an example of an adjacent property owner who was held to have standing to object to rezoning in an administrative appeal. *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 179, 743 N.E.2d 894 (2001). But the case is distinguishable not only because the issue was whether the complainant had standing to appeal to a township board of zoning appeals as a "person aggrieved" under R.C. 519.15, but also because it did not involve a declaratory-judgment action. Its rationale does not apply to the appellants in this case.

{¶ 63} The Moores do not reside in Middletown, pay no city taxes, do not vote in city elections, and are not subject to the city's jurisdiction. I cannot see how they have asserted a redressable injury in order to claim a due process or equal protection violation. The ordinance is "applied to" property in which they have no interest. An enactment or amendment of a zoning ordinance by a city is the exercise of a legislative power that belongs exclusively to the governing body

of the city. The corollary is that only those who are legally a part of the city may participate in that process. The parties cite no cases in which a court has sanctioned an effort to confer upon nonresident, legally disinterested individuals the right to participate in the legislative process of a city in enacting a local law. A plaintiff challenging municipal legislation must show that he is "within the purview of [the] ordinance or will be affected by its operation." *Anderson v. Brown*, 13 Ohio St.2d 53, 55, 233 N.E.2d 584 (1968).

**{¶ 64}** I also do not believe that the Moores have shown that they have standing to challenge the ordinance through a declaratory-judgment action.

[S]tanding to attack the constitutionality of a legislative enactment exists only where a litigant "has suffered or is threatened with *direct and concrete injury in a manner or degree different from that suffered by the public in general*, that the law in question has caused the injury, and that *the relief requested will redress the injury*."

(Emphasis added.) *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999).

**{¶ 65}** R.C. 2721.03 provides:

[A]ny person whose rights, status, or other legal relations are affected by a * * * municipal ordinance * * * may have determined any question of construction or validity arising under the * * * ordinance * * * and obtain a declaration of rights, status, or other legal relations under it.

**{¶ 66}** In their claim for declaratory relief, the Moores failed to plead any direct and concrete injury that is different in kind or in degree from that suffered by the public in general. Instead, they simply assert that Middletown failed to follow proper procedures in adopting the zoning ordinance. Specifically, they have pled that Middletown failed to consider disadvantages of the rezoning as required by a Middletown ordinance; that the rezoning generally fails to advance the public health, safety, morals, and general welfare; that the rezoning fails to adhere to common, accepted land-use locational principles; and that Middletown violated a setback requirement codified in an existing Middletown ordinance. In their declaratory-judgment action, the Moores do not allege that Middletown's failure to properly enact the zoning ordinance affects them in any unique, concrete way. Instead, they generally assert that Middletown's actions, as applied to the Martin-Bake property, violate the Moores' constitutional rights to due process and equal protection. If it in fact occurred, this violation is a general one, affecting the rights of all residents of Middletown, and is not sufficient to confer standing upon the Moores.

**{¶ 67}** We have held that "surrounding property owners" have no legal interest in the outcome of a declaratory-judgment action challenging the constitutionality of zoning as applied to another parcel of real property. *Driscoll v. Austintown Assoc.,* 42 Ohio St.2d 263, 273, 328 N.E.2d 395 (1975) ("surrounding property owners *may have a practical interest* in the outcome of a declaratory judgment action attacking the constitutionality of zoning as it applies to a specific parcel of property, but they *have no legal interest* in the outcome" (Emphasis added.)). While the Moores may have a practical interest in the land surrounding their property, they have not alleged a legal interest.

**{¶ 68}** The majority cites *Cresskill v. Dumont*, 15 N.J. 238, 104 A.2d 441 (1954), as the seminal case on this area of the law. Notably, *Cresskill* does not stand for the proposition that nonresidents have standing to bring declaratory-

26

judgment actions challenging municipal zoning ordinances. Instead, it provides that municipalities have the duty to give nonresidents who may be adversely affected by proposed zoning changes an opportunity to be heard and to give due consideration to those nonresidents. *Id.* at 247. The Moores do not allege that Middletown denied them the opportunity to be heard.

**{¶ 69}** The majority further cites the Ohio cases of *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207, 214, 690 N.E.2d 510 (1998), and *Clifton Hills Realty Co. v. Cincinnati*, 60 Ohio App. 443, 450, 21 N.E.2d 993 (1938), as support for its assertion that the Moores have potential for a declaratory remedy. These cases are factually distinct from the present one. Both *Goldberg Cos.* and *Clifton Hills Realty* arose from zoning challenges brought by the owners of the affected property, not nonresident landowners. No Ohio decision until today has granted nonresidents standing to challenge a municipality's zoning laws.

**{¶ 70}** In essence, this case represents an anticipatory nuisance claim in reaction to the coke plant proposed for the Martin-Bake property. While any landowner can sympathize with the situation the Moores find themselves in, sympathy is not sufficient to grant the Moores standing that is otherwise unprecedented in Ohio law. While there are potentially multiple pre- and post-rezoning methods for addressing any potential damage to the Moores' property arising from the potential coke plant, a declaratory-judgment action against Middletown is not one of them. By allowing nonresidents to bring a declaratory-judgment claim that could potentially result in the overturning of municipal zoning ordinances that have the approval of the residents of the municipality, the majority opens the gates to perhaps numerous challenges to zoning ordinances by nonresidents. It is my belief that the Moores have no legally protected rights that have been affected by the Middletown ordinances. I respectfully dissent and

would affirm the judgment of the court of appeals dismissing this case in its entirety under Civ.R. 12(B)(6) for lack of standing and failure to state a claim.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in the foregoing opinion.

_____

Jay C. Bennett, for appellants.

Crabbe, Brown & James, L.L.P., Robert J. Gehring, and Brian E. Hurley; and Leslie S. Landen, Middletown Law Director, and Sara E. Mills, Assistant Law Director, for appellee.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, and Rebecca K. Schaltenbrand; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.

Maurice A. Thompson, in support of neither party, for amicus curiae 1851 Center for Constitutional Law.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Laura Eddleman Heim, Deputy Solicitor, and Michael L. Stokes and William J. Cole, Senior Assistant Attorneys General, in support of neither party, for amicus curiae state of Ohio.

_____