O’Connor, C.J.,
dissenting.
{¶ 39} Even though Lucas is not qualified to hold the office of Belmont County sheriff, he will retain it.
{¶ 40} That nonsensical outcome is the result of today’s holding by a majority of this court, which completely ignores the question whether Lucas is qualified. Instead, the majority concludes that Flanagan has no standing to bring a complaint for quo warranto, the exclusive remedy to litigate the right of a person to hold a public office, because he cannot show that he is entitled to the office.
{¶ 41} In so doing, the majority chooses to ignore established precedent in which we have held that judgment in a quo warranto case may be rendered on the right of the defendant to hold the contested office and the right of the person alleged to be entitled to hold the office “ ‘or only upon the right of the defendant, as justice requires.’ ” State ex rel. Deiter v. McGuire, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 22, quoting R.C. 2733.08; Gano v. State ex rel. Robinson, 10 Ohio St. 237 (1859). And neither the majority opinion nor the concurring opinion explains why or offers a compelling analysis that supports the majority’s conclusion.
*568 {¶ 42} We are presented with two strands of our established law that are not compatible with one another. One strand, which I would preserve, recognizes that quo warranto will lie, in the interests of justice, to oust an unqualified sheriff or police chief, even if the relator cannot establish entitlement to that office. The other strand, which the majority follows, holds that an unqualified police chief or sheriff may not be ousted from the position unless the relator can establish that he is entitled to the office or that he is acting in good faith and upon reasonable grounds in asserting that he is entitled to the office. It is clear that the majority will rigorously impose the “good faith” and “reasonable grounds” standard in the future, but neither the majority opinion nor the concurring opinion offers any explanation of what those terms mean in the context of quo warranto or how a relator or any member of the public can satisfy them.
{¶ 43} Because the rule now demanded by the majority ignores a key component of our precedent, undermines the morale of our police officers and commanders, endangers the safety of the public, and defies common sense, I strongly dissent.
Analysis
{¶ 44} Gano, 10 Ohio St. 237, arose in the wake of the appointment of the first police chief in Cincinnati. In that case, we held:
In an information in the nature of a quo warranto, filed by a claimant of an office against one who is alleged to have usurped the same, the court may, in a proper case, render a judgment of ouster against the defendant to the information, without passing upon the rights of the claimant who files the information.
Even assuming that the rule articulated in Gano arose from a more “unusual situation” than any other case that this court has confronted, see concurring opinion at ¶ 37, it does not mean that we can, or should, discard its rule of law.
{¶ 45} Indeed, the rule from Gano is not some archaic remnant. It is but one piece of the much larger body of precedent that the majority ignores.
{¶ 46} As we explained a century after Gano, R.C. 2733.08 recognizes that a relator’s proof may fail in regard to one element yet succeed with respect to the other, and provides that in such an instance, “the court, as representative of the state, shall step in and render whatever decision is required by justice.” State ex rel. Ethell v. Hendricks, 165 Ohio St. 217, 226, 135 N.E.2d 362 (1956). Ethell makes clear that “the mere power, granted by statute, to initiate the action neither reduces the controversy to the statutes of a private quarrel nor divests the state of its historical interest in the persons who hold public office therein.” *569 (Emphasis added.) Id. at 225. The majority today refuses to do what is required by justice: allow a relator to maintain a quo warranto action despite his lack of entitlement to the office. This court did just that as recently as 2008.
{¶ 47} In Deiter, we reiterated the rule in the course of rejecting a city’s claim that because the relators could not show that they were entitled to become the police chief, they lacked standing to bring a claim for a writ of quo warranto to oust the chief, who had not taken the promotional exam for that office. Deiter, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, at ¶ 2, 4, 21-22. In holding that the city’s argument lacked merit, we explained:
R.C. 2733.08 provides, “When an action in quo warranto is brought against a person for usurping an office, the petition shall set forth the name of the person claiming to be entitled to the office, with an averment of his right thereto. Judgment may be rendered upon the right of the defendant, and also on the right of the person averred to be so entitled, or only upon the right of the defendant, as justice requires.” (Emphasis added.) Therefore, as we have long recognized, appellants’ potential failure to establish their entitlement to be appointed police chief does not necessarily preclude a writ of quo warranto to oust Police Chief McGuire. State ex rel. Newell v. Jackson, 118 Ohio St.3d 138, 2008-Ohio-1965, 886 N.E.2d 846, ¶ 8; State ex rel. Myers v. Brown (2000), 87 Ohio St.3d 545, 547, 721 N.E.2d 1053 (“If a relator in a quo warranto proceeding fails to establish entitlement to the office, judgment may still be rendered on the issue of whether respondent lawfully holds the disputed office”); State ex rel. Ethell v. Hendricks (1956), 165 Ohio St. 217, 226, 59 O.O. 298, 135 N.E.2d 362 (“it is apparent that Section 2733.08 recognizes that a relator’s proof may fail in regard to one element and yet succeed with respect to the other, and provides that in such instance the court, as representative of the state, shall step in and render whatever decision is required by justice”); see also Reed v. Rudnick (Dec. 13, 1995), Darke App. No. CA 1368, 1995 WL 737911, in which a court of appeals granted a writ of quo warranto to oust a police chief and a writ of mandamus to compel a city’s civil service commission to conduct a new promotional examination for the position.
Therefore, the court of appeals erred in dismissing appellants’ quo warranto claim.
Deiter at ¶ 22-23.
{¶ 48} Deiter was not an anomaly. As recently as 2012, we allowed a losing candidate in an election for sheriff, like Flanagan, to maintain a quo warranto *570 case against the winning candidate, like Lucas, without showing that he was entitled to office. State ex rel. Varnau v. Wenninger, 128 Ohio St.3d 361, 2011-Ohio-759, 944 N.E.2d 663 (“Varnau /”); State ex rel. Varnau v. Wenninger, 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790 (“Vamau IF). In Vamau II, we expressly noted that even if a relator in a quo warranto proceeding fails to establish entitlement to the office, “ ‘judgment may still be rendered on the issue of whether respondent lawfully holds the disputed office.’ ” Vamau II at ¶ 12, quoting State ex rel. Myers v. Brown, 87 Ohio St.3d 545, 547, 721 N.E.2d 1053 (2000). See also State ex rel. Delph v. Barr, 44 Ohio St.3d 77, 80, 541 N.E.2d 59 (1989) (holding in a case challenging an appointment of a police chief that if a relator fails to show entitlement to a contested office, “judgment may be rendered only on the issue of whether respondent lawfully holds the office”).
{¶ 49} Although the concurring opinion makes much of the fact that Vamau I and Vamau II did not discuss standing and that Deiter did not mention the good-faith-and-reasonable-grounds standard for standing, the absence of that discussion in those cases does not support the majority’s view. Quite the contrary, the fact that we did not impose the requirement in those cases undermines the majority’s rigid insistence that we must do so now.
{¶ 50} Clearly, this area of law is not as simple as the majority wishes to make it. There are times when it is impossible to know who the rightful officeholder is, even when it is crystal clear that the person currently holding the office is unqualified to do so. In that situation, our law should recognize that justice, the state, and the people of Ohio have an interest in ousting the unrighteous from holding the office of police chief or sheriff. But the rule announced today extinguishes that option.
{¶ 51} In an effort to simplify the law,[2] the concurring opinion mocks the notion that “any concerned citizen could bring a petition to oust” an unqualified sheriff or police chief. (Emphasis sic.) Concurring opinion at ¶ 30. But if the officeholder is not qualified, why shouldn’t he be ousted by the action of a concerned citizen? Rather than treating that concept with derision, we should create a workable rule of law that allows for a citizen who may not be qualified for the position of sheriff or police chief to seek ouster of an unqualified sheriff or police chief. After all, the fact that someone is not qualified to be the police chief or sheriff does not mean that she is not qualified to oust someone else who is unqualified to hold that position or to recognize that she can suffer as a result of *571 having an unqualified person govern the safety forces that are charged with protecting her family and property.
Mark E. Landers, for relator.
Lancione, Lloyd & Hoffman Law Office Co., L.P.A., Christopher J. Gagin, and Tracey Lancione Lloyd, for respondent.
{¶ 52} Moreover, by that same analysis, the majority not only precludes “any concerned citizen” from having standing to challenge an unqualified officeholder but also strips standing from any bargaining unit or union of police officers or firefighters or deputies. Such a result is unconscionable.
Conclusion
{¶ 53} The overly restrictive rule announced today, which discards law that has survived for over 150 years, is as unexplained as it is abrupt. The majority simply ignores that precedent without explaining why; without overruling any decision from Gano to Vamau II; and without acknowledging that the practical result of the majority’s decision is that unqualified candidates can assume and retain public offices — including the offices of police and fire chief — so long as no challenger can show entitlement to the office.
{¶ 54} The effect of this decision will most likely not be felt by the justices in the majority. It will be felt by the men and women whom we ask to do the most difficult jobs — our first responders — and the people they protect, in Belmont County and throughout the state.
{¶ 55} Rather than ignore our precedent in this vitally important area of the law, I would adhere to it. And applying it here, I would hold that although Flanagan has not established that he is entitled to the office of Belmont County sheriff, he is entitled to a limited writ of quo warranto ousting Lucas from that position because Lucas is not qualified to hold it under the laws of Ohio.[3] I therefore dissent.
Lanzinger and O’Neill, JJ., concur in the foregoing opinion.

. The concurring opinion’s reliance on Moore v. Middletown, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 23, is curious. See concurring opinion at ¶ 30. That case is factually and legally distinguishable. And in Moore, this court held that the property owners had standing to bring their claims. Even the carefully selected paragraph of the decision that the concurrence cites does not offer any support for the rule the majority announces.

. Lucas is ineligible to be sheriff because the evidence demonstrates that he does not meet the experience requirements of R.C. 311.01(B)(8)(a) or (b). R.C. 311.01(B). Notably, neither the majority opinion nor the concurring opinion disputes the fact that Lucas is ineligible for the position that he now holds and that he will continue to hold as a result of the majority’s analysis today.