[Cite as *Smith v. Omaits*, 2016-Ohio-1442.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CRAIG O. SMITH, | ) | CASE NO. 15 JE 0018 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ROBERT J. OMAITS AND | ) | |
| DONA K. OMAITS, | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Jefferson County, Ohio
Case No. 15CV88, 15CV113

JUDGMENT:                                    Affirmed.

APPEARANCES:

For Plaintiff-Appellant:                  Craig O. Smith, *pro se*
463 Morningside Drive
Steubenville, Ohio  43953

For Defendants-Appellees:            Atty. Michael J. Calabria
Attorney at Law
Assistant Prosecutor
Bruzzese & Calabria
100 North Fourth Street, 3rd Floor
P.O. Box 1506
Steubenville, Ohio  43952

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  March 24, 2016

ROBB, J.

**{¶1}** Plaintiff-Appellant Craig Smith appeals the decision of the Jefferson County Common Pleas Court granting summary judgment in favor of Defendant-Appellees Robert and Dona Omaits. Appellant argues the trial court erred in holding he lacked standing. This argument is overruled. Accordingly, Appellant's alternative contention, that the court erred in finding his claims were barred by the statute of limitations, is moot and shall not be addressed. The trial court's decision is affirmed.

## STATEMENT OF THE CASE

**{¶2}** On July 8, 1993, Appellees entered a purchase contract and an option contract with Willard V. (aka W. Vincent) West and Nettie West. The contracts were prepared by Attorney Lawrence Piergallini. In the purchase contract, the Wests sold 80 acres of land in Smithfield Township to Appellees for $50,000. A deed evidencing the transfer was executed on April 26, 1994 and recorded on May 5, 1994.

**{¶3}** In the separate option contract, the Wests granted Appellees an option to purchase an adjacent 38 acres of land for $25,000. The option was exercisable within 90 days of June 1, 2003; it could be exercised earlier if Mr. West died or if the Wests or their heirs gave notice of the desire to sell. The option was contingent upon the completion of the purchase contract.

**{¶4}** Mr. West died on February 20, 2000. A probate estate was opened in March 2000 in the Jefferson County Probate Court upon the filing of Mr. West's January 28, 1997 will. Pursuant to the will, Monte Smith was appointed as executor, and Attorney Piergallini was hired as the estate's attorney. The will contained various specific bequests, including a bequest of $2,000 to Appellant and a bequest of $2,000 to Monte Smith. The main beneficiary received Mr. West's house with an acre of property and the residue of the estate; she was listed as Mr. West's daughter in the probate form for next of kin.

**{¶5}** On May 16, 2000, Executor Monte Smith signed a fiduciary deed transferring the 38 acres subject to the option contract to Appellees and acknowledging Appellees' payment of $25,000. The deed was recorded the next day.

**{¶6}** In March 2015, Appellant, acting pro se, filed two civil actions against Appellees. In 15CV88, the complaint sought to recover the 38-acre parcel and nullify the fiduciary deed. This complaint alleged the attorney filed false documents in the probate court as the estate was never paid the $25,000 due from Appellees under the option contract.

**{¶7}** In 15CV113, the complaint sought to recover the 80-acre parcel of land and nullify the 1993 purchase contract. The complaint suggested the Wests did not intend to relinquish their coal and mineral rights in the purchase contract. Appellant claimed Appellees worked in concert with the attorney to deceive and take unfair advantage of the Wests causing them to sign an unreasonable and illegal contract. (This claim was mentioned in the other complaint as well.)

**{¶8}** In both complaints, Appellant accused Appellees of conspiring with the attorney to commit criminal acts of theft. In addition to recovery of the property, he asked for the proceeds from any oil and gas leases since the date of each property transfer. Upon Appellees' request, the trial court consolidated the two cases into 15CV88.

**{¶9}** On June 5, 2015, Appellees filed a motion for summary judgment. They argued Appellant lacked standing as he was not a party to the contracts and was not the executor of the estate. They stated Appellant failed to show entitlement to relief since he was not the residuary beneficiary and his specific bequest under the will was fulfilled. Appellees alternatively argued the claims were barred by the statute of limitations or the doctrine of laches, pointing to the eight-year statute of limitations for breach of contract and the four-year statute of limitations for fraud. In anticipation of an argument on the 21-year statute of limitations for recovery of title to or possession of real property, Appellees said the statute did not apply because Appellant had no title to recover and he was not in possession.

**{¶10}** Appellees also urged the documents relied upon by Appellant established no basis of fact for his claims. The affidavit of Mr. Omaits attested to his knowledge of the facts concerning the land interests and identified various documents. He explained that when he purchased the 80-acre tract from Mr. West,

the property was in the process of being strip-mined by a coal company with a fifteen-year lease. He would not be able to use the newly-purchased property until the coal company completed the strip-mining and reclamation. Mr. Omaits asserted he never would have purchased the 80 acres for $50,000 under these conditions were it not for the option to purchase the 38-acre parcel. He explained that Mr. West drafted handwritten notes for the attorney, and these notes were attached to the affidavit. Mr. Omaits confirmed that the final contracts were signed by himself, his wife, Mr. West, and Mrs. West.

**{¶11}** As to the exercise of the option, Mr. Omaits asserted he paid the attorney $25,000 after Mr. West's February 2000 death. He provided: a copy of the note he gave to the attorney containing his exercise of the option; a copy of his check dated April 28, 2000 in the amount of $25,000 payable to the attorney; and a copy of the April 28, 2000 letter from the attorney describing the obligations under the option contract, which Mr. Omaits had signed in acknowledgement. In explaining a probate filing relied upon by Appellant, Appellees' motion said they had not yet exercised the option at the time the initial inventory was performed.[1]

**{¶12}** On the same day Appellees' motion was filed, Appellant submitted a financial worksheet showing the estate's receipts and disbursements prepared by an employee at the attorney's office. Although Appellant suggested it contained evidence supporting his case, this document confirmed the payment of $25,000 to the estate from Appellees in an entry dated May 17, 2000 (which is the same day the fiduciary deed was recorded).

---

[1] The schedule of assets attached to the probate inventory valued the 38-acre parcel at $50,000, said Appellees had an option to purchase for $25,000, and added, "at the time of this Inventory, the Option hasn't been exercised." In the final fiduciary's account filed in the probate court on June 27, 2011, the 38-acre parcel was listed as a receipt with the same description from the inventory. Appellant focuses on the fact the final accounting contained the language, "at the time of this Inventory, the Option hasn't been exercised." However, the filing was the schedule of receipts and disbursements attached to the final account, not an inventory. Contrary to Appellant's urging, the language is not akin to the statement, "at the time of the final account, the option hasn't been exercised."

Furthermore, under disbursements, $25,000 was listed as a loss on real estate. Appellant believes this was done by the attorney (in concert with Appellees) to hide the $25,000 paid by Appellees. From this, he concludes the estate never received the $25,000 due under the option contract. However, as the property was valued at $50,000 and the loss was only $25,000, this is merely a report that the estate received the remaining $25,000 and disbursed it. (The residual beneficiary made no claim she did not receive the final amount listed as being disbursed to her.)

**{¶13}** At the time Appellees' June 5, 2015 summary judgment motion was filed, an oral hearing was set for June 29, 2015 at 9:00 a.m. Eight minutes before the hearing, Appellant filed his response to the motion. Regarding the 38 acres, Appellant alleged a theft of real estate. He accused the estate's attorney of deceiving the executor into believing Appellees paid $25,000 to the estate when they did not and suggested Appellees were co-conspirators. Appellant noted Appellees' check was made payable to the estate's attorney rather than the estate and claimed there was no proof the $25,000 was deposited into the estate's account. He claimed the final accounting filed in the probate court concealed the payment of $25,000 by showing a loss on the sale of real estate.

**{¶14}** Appellant also expressed a belief the option contract was signed on May 8, 1993, rather than at the same time as the purchase contract on June 8, 1993. He relies on the fact that the notary's acknowledgment contained the month of May, but this was crossed out and June was handwritten above it.

**{¶15}** As to the 80 acres, Appellant speculated: the Wests refused to sign the first draft; the attorney modified item 3 in the exceptions clause; and the Wests believed their mineral rights were reserved. Item 3 of the June 8, 1993 purchase contract excepted and reserved to the Wests all minerals in the area highlighted on an attached map and the right to auger coal beyond the highlighted area. Item 3 then stated: "It is agreed that the exceptions contained in this paragraph shall be for the term of fifteen (15) years. That at the expiration of fifteen (15) years from the date of the conveyance of the premises, this exception shall become null and void and the minerals and rights reserved shall revert to the Buyer without further action."

**{¶16}** The corresponding deed the Wests signed on April 26, 1994 repeated this language just above the signature line. Appellant claimed Mr. West's handwritten notes would not permit the attorney to place a reverter in the final agreement. (Actually, the handwritten notes say all mineral rights go with the farm except those rights granted to coal companies, which the affidavit of Mr. Omaits stated were for 15 years.)

**{¶17}** Appellant concluded Appellees have no right to real estate illegally obtained, claiming they conspired with the attorney in 1993 to deceive the Wests regarding the two parcels of property in anticipation of future drilling. He said Mr. Omaits was Mr. West's lifelong friend and neighbor; he also said the attorney knew Mr. West his entire life. Appellant submitted no affidavit in support of his factual allegations; nor were depositions, admissions, or answers to interrogatories filed.

**{¶18}** On the issue of standing, Appellant argued the estate's executor is his brother, who granted him authority to act as executor in a June 15, 2014 document.[2] He attached an Application of Authority to Administer Estate, which he signed, and a Waiver of Right to Administer, which his brother purportedly signed. He said the application was rejected for filing by the clerk of the probate court. Although he acknowledged he "did not have capacity to sue in behalf of the estate," he also claimed to be "arguing for Executor in behalf of the estate."

**{¶19}** Regarding the statute of limitations defense, Appellant mentioned the statute of limitations for written contracts in R.C. 2305.06. He then urged the estate could recover title by filing an action to recover title to or possession of real property within 21 years after the cause of action accrued, citing R.C. 2305.04. Although one of his claims was based on the 1993 purchase agreement, his memorandum concludes, without explanation, that both complaints were filed within 21 years.

**{¶20}** The trial court entered summary judgment in favor of Appellees. The court found Appellant lacked standing and the claims were barred by the statute of limitations. (8/3/15 Nunc Pro Tunc J.E.) (correcting a typographical error in 6/30/15 J.E.). Appellant filed a timely notice of appeal. Appellant, who remains pro se, sets forth two assignments of error addressing the trial court's decisions on standing and statute of limitations.

<u>SUMMARY JUDGMENT</u>

---

[2] Appellant states this document was signed on June 15, 2014. However, the only place this date appears on the document is where someone filled in "6-15-14" as the date the notary's commission expired. Although the notary's stamp and seal appear on the document, there is no signature of the notary.

{¶21} Summary judgment can be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact demonstrate there remain no genuine issues of material fact and reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Civ.R. 56 must be construed in a manner that balances the right of the non-movant to have a jury decide claims and defenses that are adequately based in fact with the right of the movant to demonstrate, prior to trial, that the claims and defenses have no factual basis. *Byrd v. Smith*, 110 Ohio St.3d 24, 26-27, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 11, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶22} In determining whether there exists a genuine issue of material fact to be resolved at trial, the court is to consider the evidence and reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant. *See Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11, applying Civ.R. 56(C). The movant has the initial burden to show that no genuine issue of material fact exists. *Byrd*, 110 Ohio St.3d 24 at ¶ 10, 850 N.E.2d 47, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

{¶23} Upon that showing, the burden shifts to the non-moving party who then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth *specific* facts showing that there is a genuine issue for trial and *may not rest upon mere allegations* or denials in the pleadings. Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." *Id.*

{¶24} The material issues of a case depend on the applicable substantive law. *Byrd*, 110 Ohio St.3d 24 at ¶ 12, 850 N.E.2d 47. Only disputes over facts that could affect the outcome of the precise legal issue being considered can preclude the entry of summary judgment. *See id.* Therefore, if the non-movant has failed to set forth a genuine issue of material fact on a threshold issue, it is irrelevant whether there are genuine issues on subsequent issues. We consider the propriety of

granting summary judgment under a de novo standard of review. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

<u>ASSIGNMENT OF ERROR ONE: STANDING</u>

{¶25} Appellants' first assignment of error provides:

THE TRIAL COURT ERRED IN HOLDING THAT THE APPELLANT LACKED STANDING TO MAINTAIN THIS ACTION.

{¶26} Before a trial court can consider the merits of a claim, the plaintiff must establish standing to sue. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20-21. In order to make a legal claim or seek judicial enforcement of a duty or right, a party must have a personal stake in the outcome of the controversy. *Id.* at ¶ 21 (to ensure the dispute is presented in an adversary context capable of judicial resolution). The plaintiff must demonstrate: (1) he suffered an injury that is (2) fairly traceable to the alleged conduct of the defendant and (3) likely to be redressed by the relief requested. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

{¶27} There must be an actual controversy in the form of a genuine legal dispute between parties with adverse legal interests. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 324, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10 (2010), modification of ¶ 20 on reconsideration, 127 Ohio St.3d 1550, 2011-Ohio-647, 941 N.E.2d 805 (maintaining that a loss to the plaintiff must be identified). The question of whether *established facts* in a case confer standing on a plaintiff to assert a claim is reviewed de novo as a matter of law. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 90.

{¶28} To the extent a person claims to sue on behalf of another with standing, the representative may lack capacity to sue. For instance, a person not yet appointed executor lacks capacity to sue on behalf of the estate until appointed. *See Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 12AP-987, 2013-Ohio-4057, ¶ 15.

**{¶29}** Appellees cite the statement: "In the absence of special circumstances, the next of kin cannot maintain actions in their own name to recover unadministered personal estate of the decedent or collect debts or other choses of action due him. Such actions can be maintained only by the personal representative of the deceased." *McCord v. Cent. Trust & Safe Deposit Co.*, 13 Ohio App. 26, 29 (1st Dist.1920), citing *McBride v. Vance*, 73 Ohio St. 258, 76 N.E. 938 (1906). In the *McBride* case, the Supreme Court held the sole heir of a decedent could not bring an action on a promissory note belonging to a decedent. The Court emphasized: "the payment of debts to the deceased can be coerced by no one but the lawfully appointed executor or administrator, even in equity, because there is no privity between the debtors and any person other than the legal representative." *Id.* at 262.

**{¶30}** Appellant responds by arguing that his allegations of fraud by the estate's attorney qualify as the special circumstances contemplated in *McCord*. Appellant also relies on the holding that a vested remainderman is in privity with the estate's fiduciary and can file a legal malpractice action against the attorney for the fiduciary. *Elam v. Hyatt Legal Services*, 44 Ohio St.3d 175, 177, 541 N.E.2d 616 (1989), distinguishing *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987) (no attorney malpractice action was maintainable where privity was lacking as the party was a mere potential beneficiary of his father's estate with no vested interest).

**{¶31}** However, *Elam* dealt with whether an attorney was "immune from liability to the vested beneficiary" in a malpractice suit for acts performed during estate administration. It dealt with the vested remainderman being able to sue the attorney hired by the executor for the estate because that remainderman was in privity with the executor of the estate. The present case is not against the attorney whom Appellant accuses of theft and malpractice. Appellees have no fiduciary duties to the Wests, the executor, or the estate.

**{¶32}** In arguing he had a right to bring this action in the trial court, Appellant spoke of some unknown failure by the attorney as to the will of Mrs. Nettie West and suggested he had a problem with the naming of the residual beneficiary in the will of Mr. W. Vincent West. The injury and relief alluded to involve nebulous propositions

about whom should have inherited from the Wests. These propositions are not at issue in this case and are unrelated to the allegations levied against Appellees. They are unsupported by affidavit; they are mere predictions as to what could have been in the probate case; and they do not establish standing.

**{¶33}** Appellant also insisted he was acting for the executor by filing this lawsuit. Under this assignment of error, his brief presents two factual items: the attorney's "non-action on Mrs. West's legal will prevented" him from serving as executor; and the probate clerk refused his application to be appointed executor, which was purportedly signed by his brother as the prior executor. Appellant appears to be arguing he would be the executor but for the alleged actions of individuals who are not involved in this suit. These contentions are in no way traceable to the alleged conduct of the defendants. *See Moore*, 133 Ohio St.3d at ¶ 22.

**{¶34}** The fact is: Appellant is not the personal representative of the estate. Contrary to his contention, the fact that he wishes he was the executor instead of his brother, whom he claims also wishes Appellant was the executor, does not provide him with capacity to sue on behalf of the estate.

**{¶35}** Regarding a personal stake in the outcome to show standing to sue in his own right, any injury that is fairly traceable to the alleged conduct of the defendant must be an injury to the plaintiff and must be likely to be redressed by the relief requested. *Moore*, 133 Ohio St.3d at ¶ 22. As Appellees point out, Appellant is not a party to the 1993 purchase contract or option contract. Nor was he involved in the exercise of the option contract. His complaint and response to summary judgment do not reveal who he is in relation to the Wests. Appellees have consistently argued Appellant would not be benefitted by any relief granted in a successful suit since he received his specific bequest and is not the residual beneficiary. Appellant has not refuted this position.

**{¶36}** Appellant did not submit an affidavit in support of his factual assertions concerning his capacity to sue or standing. A non-movant may not rest upon the mere allegations or denials of the party's pleadings; the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing the movant

is not entitled to judgment as a matter of law. Civ.R. 56(E). We do not consider unsworn facts contained in response to summary judgment; nor do we infer standing.

**{¶37}** At one point in arguing he had standing, Appellant relied on the alleged substance of his claims, urging he should be permitted to maintain this action because Appellees have no right to unlawfully obtained realty. However, standing is not dependent on the merits of the plaintiff's claim as to the defendant's conduct but turns on the nature and source of the claim. *Moore*, 133 Ohio St.3d 55 at ¶ 23.

**{¶38}** Lastly, we need not create legal arguments for a pro se party or excuse procedural failures. Pro se litigants are held to the same standard as those who are represented by counsel. *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10. This is especially true in a civil case. *See, e.g., Reed v. Jagnow*, 7th Dist. No. 12MA201, 2013-Ohio-2546, ¶ 32. *See also Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In addition, various assertions were made only in filings the trial court had no obligation to view in ruling on Appellees' motion for summary judgment, such as a motion voluntarily withdrawn by Appellant within two weeks of its filing or his "Answer to Defendant's Answer." *See* Civ.R. 7(A) (there shall be a complaint and an answer but no reply to the answer unless the court orders it).

**{¶39}** Furthermore, this court only reviews what was before the trial court. *Mauersberger v. Marietta Coal Co.*, 7th Dist. No. 12BE41, 2014-Ohio-21, ¶ 15, citing *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), syllabus at ¶ 1. This court has issued judgment entries overruling Appellant's attempts to submit evidence in this appellate case. Any pending motions to permit additional evidence are likewise overruled.

**{¶40}** In sum, despite his insistence that he should be the executor of an estate, Appellant was not the personal representative of the estate whom he claims to be representing pro se. In the absence of this capacity, Appellant was required to show his redressable personal stake in the outcome of the controversy in order to show standing. *See Moore*, 133 Ohio St.3d at ¶ 21. However, he failed to do so.

{¶41} Appellant's first assignment of error is overruled. Appellant's second assignment of error alternatively argues the case is not barred by the statute of limitations. As Appellant lacked capacity and standing to bring this suit, his second assignment of error is moot and shall not be addressed. The trial court's judgment in favor of Appellees is affirmed.


Donofrio, P.J., concurs.

DeGenaro, J., concurs.