[Cite as *SW Acquisition Co., Inc. v. Akzo Nobel Paints, L.L.C.*, 2021-Ohio-309.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SW ACQUISITION CO., INC.,  :

    Plaintiff-Appellant,  :

                     No. 109236

    v.  :

AKZO NOBEL PAINTS, L.L.C., ET AL.,  :

    Defendants-Appellees.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-904917

---

***Appearances:***

Strauss Troy Co., L.P.A., and Philomena S. Ashdown, *for appellant*.

Thompson Hine, L.L.P., Timothy J. Coughlin, and Mark R. Butscha, Jr., *for appellees*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, SW Acquisition Co., Inc. ("SWAC"), appeals from the decision of the trial court granting summary judgment in favor of defendant-appellee, PPG Architectural Finishes, Inc. ("PPG"). SWAC raises the following assignments of error for review:

1. The trial court improperly reviewed the claims on the merits when the sole relief requested in the complaint was for the trial court to appoint an arbitrator.

2. The trial court improperly found that the previously disclosed contract claim was precluded by judicial estoppel purely because the claim was initially valued at $0 by the former owner/assignor.

3. The trial court incorrectly found that the fraud claim was precluded by judicial estoppel due to the failure of the prior owner to disclose this claim on its [bankruptcy] schedules.

{¶ 2} After careful review of the record and relevant case law, we reverse the trial court's judgment and remand the case for the trial court to enforce the binding arbitration provisions contained in the relevant commercial contract.

## I.    Procedural and Factual History

{¶ 3} In September 2009, Miller Brothers Wallpaper Company, Inc. ("Miller Bros.") purchased certain retail stores and assets from Akzo Nobel Paints, L.L.C. ("Akzo"), the predecessor-in-interest to PPG.  Miller Bros. further agreed to be the "semi-exclusive dealer" of Akzo's paint products pursuant to an Authorized Dealer Agreement ("the ADA").  The ADA contains a broadly worded arbitration provision, which states, in relevant part:

> Any controversy or claim arising out of or relating to this Agreement or breach of this Agreement shall finally be settled by binding arbitration before single arbitrator who will be jointly appointed by the parties. * * * If the parties cannot agree on an arbitrator, either party may request, any judge located in Cuyahoga County, Ohio to appoint an arbitrator, which appointment shall be final. The arbitration will be held in Cleveland, Ohio.

ADA at ¶ 21.

{¶ 4} In October 2012, Miller Bros. filed for bankruptcy on the basis of a voluntary petition signed by its president and sole shareholder, Victor Wells. According to Miller Bros.'s bankruptcy petition, Akzo was its largest unsecured creditor, with an unsecured claim in the amount of $946,000. Schedule B of the bankruptcy filing required Miller Bros. to list all of its personal property, including "contingent and unliquidated claims of every nature," and the "estimated value of each." In compliance with this requirement, Miller Bros. listed a "potential claim against former supplier [Akzo] for breach of contract" with a stated value of "0.00." No other claims were listed in the schedules.

{¶ 5} During the bankruptcy proceedings, Miller Bros. moved to approve the sale of its assets to "an insider, SWAC, whose sole shareholder is Steve Wells, son of debtor's sole shareholder Victor Wells." The bankruptcy court approved Miller Bros.'s sale of assets to SWAC in January 2013.

{¶ 6} Miller Bros.'s bankruptcy case was dismissed in July 2013. Thereafter, SWAC filed a complaint in the Hamilton County Court of Common Pleas, alleging causes of action for breach of contract and fraud against Akzo and John Does 1-10. SWAC alleged that Akzo fraudulently induced Miller Bros. to enter the asset purchase agreement by providing false financial information. SWAC further pursued a breach of contract claim that was premised on Akzo's failure to comply with its guarantee of a 28 percent profit percentage and its promise that Miller Bros. would have the exclusive right to sell Akzo products within a specific geographical

region. In October 2013, the case was removed to the United States District Court for the Southern District of Ohio.

{¶ 7} In December 2013, PPG, successor-by-merger to PPG Architectural Coatings, L.L.C., f.k.a. Akzo Nobel Paints, L.L.C., filed a motion to dismiss and compel arbitration. PPG argued that arbitration was appropriate because (1) "the parties signed a broadly worded agreement providing for that method of dispute resolution," and (2) "[SWAC] is bound by its predecessor's agreement to arbitrate all related claims." The federal court granted the motion in April 2014, stating, in relevant part:

> In sum, a valid agreement to arbitrate exists between the parties and the specific disputes raised in the complaint fall within the substantive scope of that agreement to arbitrate. [SWAC]'s claims are all subject to binding arbitration.

{¶ 8} In October 2018, SWAC filed a complaint against Akzo, PPG, and John Does 1-10 in the Cuyahoga County Court of Common Pleas. The complaint, which was amended in December 2018, contained a single prayer for relief that sought to compel arbitration pursuant to R.C. 2711.03. Relevant to this appeal, the amended complaint alleged as follows:

> 12. That the parties or their predecessors in interest entered into the agreements attached hereto and marked exhibit A, [the ADA] and [asset purchase agreement], and the foregoing documents provide for any controversy or claim arising out of or relating to this agreement or beach of this agreement shall finally be settled by binding arbitration before single arbitrator who will be jointly appointed by the parties.

> 13. The parties have been unable to agree on an arbitrator as provided in the [ADA] and [SWAC] will be denied access to arbitration unless this Court appoints an arbitrator.

14. The [ADA] provides that if the parties are unable to agree on an arbitrator, either party may request any judge located in Cuyahoga County, Ohio, to appoint an arbitrator, and the selection of the arbitrator by judge located in Cuyahoga County, Ohio, shall be final and [SWAC] requests this court to implement this provision of the parties' agreements.

15. [SWAC] has valid claims against the defendants and [SWAC] desires to arbitrate the claims including but not limited to actions for fraud, breach of contract, request for damages, both compensatory and punitive.

* * *

17. That the defendants have refused to acquiesce or participate in the selection of an arbitrator by judge located in Cuyahoga County, Ohio and thereby have denied [SWAC] the opportunity to resolve [its] claims pursuant to the agreements attached hereto.

{¶ 9} In February 2019, PPG moved to dismiss the amended complaint, arguing that SWAC lacks standing or, alternatively, should be judicially estopped from seeking the appointment of an arbitrator to resolve its purported claims. Following SWAC's filing of a brief in opposition, the trial court converted the motion to dismiss to a motion for summary judgment and ordered the parties to submit supplemental briefing.

{¶ 10} In April 2019, PPG filed a supplemental motion in support of the converted motion for summary judgment. In its motion, PPG reiterated its position that SWAC lacks standing to pursue an action against PPG because the purported fraud claim was not listed as an asset in the Miller Bros. bankruptcy schedules and the breach of contract claim had a listed monetary value of $0.00. Alternatively, PPG argued that SWAC is judicially estopped from bringing the asserted claims because they are predicated on facts that are inconsistent or contrary to Miller

Bros.'s sworn representations during the bankruptcy proceedings. PPG supported its motion for summary judgment with a copy of SWAC's original complaint in the Hamilton County Court of Common Pleas and certified copies of the relevant pleadings in the federal bankruptcy court.

{¶ 11} SWAC filed a brief in opposition to summary judgment, arguing that there remained genuine issues of material fact regarding the scope and nature of the assets purchased from Miller Bros. SWAC asserted that PPG's motion for summary judgment essentially equated to an attempt to set aside the federal court's order compelling arbitration, and "to further set aside or modify the order of sale issued by the bankruptcy court." SWAC supported its brief in opposition with a copy of PPG's motion to dismiss and compel arbitration in the federal court, a copy of the federal court's order granting PPG's motion to dismiss and compel arbitration, copies of relevant pleadings in the bankruptcy court, and the affidavit of Steve Wells.

{¶ 12} A hearing was held to address PPG's motion for summary judgment in July 2019. At the hearing, PPG explained its standing and judicial estoppel arguments as follows:

> [T]he argument boils down to that the fraud was not disclosed [in the bankruptcy proceedings]. The contract claim was represented to be worthless and, therefore, [SWAC] has no standing to assert a fraud claim that was not disclosed or a worthless contract claim. And even if it has standing, it's judicially estopped because the claim was not disclosed. In other words, it did not exist under Sixth Circuit law or it was represented to have zero dollars and now [SWAC] cannot take a contrary position in this case.

**{¶ 13}** In contrast, SWAC maintained that the breach of contract claim was sufficiently disclosed and, although the claim was listed as having a value of zero, this characterization reflected that the value of the claim was unknown as opposed to being worthless. SWAC further argued that because it purchased "*all* assets of the seller," it necessarily purchased an interest in the fraud claim. As explained by counsel for SWAC, "if there's a fraud claim, that's one of the assets, Your Honor."

**{¶ 14}** In August 2019, the trial court issued an order and opinion granting summary judgment in favor of PPG, stating:

> This court finds that [SWAC] lacks standing to pursue its claim as the fraud cause of action was not disclosed in the bankruptcy petition and therefore could not have been part of the sale to [SWAC]. In addition, the contract claim at issue was included in the bankruptcy, however, its value was listed as $0. Thus, [SWAC] did not suffer a concrete and particularized injury in the first place, and there is no issue for which the court can provide redress.

**{¶ 15}** In addition, the trial court determined that the doctrine of judicial estoppel further warranted summary judgment in favor of PPG, stating:

> The position that [SWAC] took under oath in front of the bankruptcy court was that any breach of contract claim was worth $0, and that there was no fraud claim, a position which the bankruptcy court accepted. Consequently, this court finds that [SWAC] is judicially estopped from bringing its claims against [PPG], as they were either not disclosed or disclosed with a value of $0 in the previous bankruptcy action.

**{¶ 16}** Finally, the trial court determined that "the instant dispute is not arbitrable" because the potential claims against PPG were not within the scope of the relevant arbitration agreement.

**{¶ 17}** SWAC now appeals from the trial court's judgment.

## II. Law and Analysis

{¶ 18} Collectively, SWAC's first, second, and third assignments of error challenge the trial court's decision to grant summary judgment in favor of PPG. In its first assignment of error, SWAC contends that the trial court exceeded its jurisdiction by addressing the underlying claims of breach of contract and fraud when assessing its petition to compel arbitration. Alternatively, SWAC argues in its second and third assignments of error that the trial court incorrectly applied the principles of standing and judicial estoppel.

## A. Standard of Review

{¶ 19} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998).

{¶ 20} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 21} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶ 22} With the foregoing standard in mind, we address SWAC's complaint to compel arbitration.

## B. The Ohio Arbitration Act

{¶ 23} The Ohio Arbitration Act provides: "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). Thus, Ohio recognizes a "strong public policy" in favor of arbitration and the enforcement of arbitration provisions. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 24. Although a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to arbitration, *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687

N.E.2d 1352 (1998), "[a]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Natale v. Frantz Ward, L.L.P.,* 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9 (8th Dist.), citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14.

{¶ 24} The Ohio Arbitration Act allows for either direct enforcement of such agreements through an order to compel arbitration under R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C. 2711.02. *Maestle v. Best Buy Co.,* 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 14. A party may choose to move for a stay, petition for an order to proceed to arbitration, or seek both. *Id.* at ¶ 18. However, these are separate and distinct procedures. *Id.* at ¶ 14.

{¶ 25} In this case, SWAC sought to compel the appointment of an arbitrator pursuant to R.C. 2711.03. The statute provides, in relevant part:

> (A) The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.
>
> (B) If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. * * *.

{¶ 26} Pursuant to the plain language of the statute, when a defendant petitions the trial court for an order compelling arbitration, "the trial court must determine that the arbitration agreement or failure to comply with the agreement is

not an issue before compelling arbitration." *Cole v. Macy's, Inc.*, 8th Dist. Cuyahoga No. 99502, 2013-Ohio-4705, ¶ 7. "[W]hen determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause." *Garcia v. Wayne Homes, L.L.C.*, 2d Dist. Clark. No. 2001 CA 53, 2002-Ohio-1884, ¶ 29.

{¶ 27} Throughout these proceedings, PPG, as Akzo's successor-in-interest, has not disputed the validity of the arbitration provision contained in the ADA. In fact, the record reflects that PPG has previously argued in the federal court that "[SWAC's] claims in this matter are arbitrable" because (1) SWAC stepped into the shoes of Miller Bros., (2) the parties agreed that all claims or controversies be resolved by binding arbitration, and (3) SWAC's claims are not statutorily exempt from arbitration.

{¶ 28} Yet, despite its prior position in the federal court, PPG now argues in state court that it would be "futile" to order the parties to arbitration because SWAC lacks standing to pursue claims for breach of contract and fraud, or, alternatively, is judicially estopped from seeking the appointment of the arbitrator. As previously stated, PPG's argument is predicated on the information disclosed to the bankruptcy court in the Miller Bros.'s summary of schedules.

{¶ 29} On appeal, SWAC counters that, pursuant to the plain language of R.C. 2711.03, the trial court exceeded the scope of its jurisdiction by addressing the

issue of standing and judicial estoppel "when the sole issue before the court was to appoint an arbitrator." SWAC maintains that the underlying claims fell within the scope of the mandatory arbitration agreement and, therefore, the trial court had "no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

## 1. Standing and Judicial Estoppel

{¶ 30} Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters * * * as may be provided by law." Ohio Constitution, Article IV, Section 4(B). Pursuant to R.C. 2305.01, courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." This court has long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to "all matters at law and in equity that are not denied to it." *Saxton v. Seiberling*, 48 Ohio St. 554, 558-559, 29 N.E. 179 (1891).

{¶ 31} Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998); *Handy v. Ins. Co.*, 37 Ohio St. 366, 370 (1881). A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980,

806 N.E.2d 992, ¶ 12.  This latter jurisdictional category involves consideration of the rights of the parties.

{¶ 32} "Standing is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court — even a court of competent subject-matter jurisdiction — over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22.  "But an inquiry into a party's ability to invoke a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." *Id.*

{¶ 33} A determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in order to establish standing.  *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27; *see also CapitalSource Bank v. Hnatiuk*, 8th Dist. Cuyahoga No. 103210, 2016-Ohio-3450, ¶ 22, quoting *Davet v. Sheehan*, 8th Dist. Cuyahoga No. 101452, 2014-Ohio-5694, ¶ 22 ("'It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court.'").  Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action.  *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 40.  Standing is a question of law that we review de novo.  *In re $75,000.00 United States Currency (Katz)*, 2017-Ohio-9158, 101 N.E.3d 1209, ¶ 45 (8th Dist.), citing *State v. Jamison,* 2d Dist. Montgomery No. 23211, 2010-Ohio-965, ¶ 10.

{¶ 34} Contrary to SWAC's contention that the trial court improperly delved into the merits of its potential claims, it is well established that "[s]tanding is a preliminary inquiry that must be made before a court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9. Traditional standing principles require the plaintiff to show that he or she has suffered (1) an injury that is, (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To have standing, a plaintiff must have a personal stake in the outcome of the controversy and have suffered some concrete injury that is capable of resolution by the court. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986).

{¶ 35} In this case, PPG's standing argument focuses exclusively on the potential claims of breach of contract and fraud referenced in SWAC's amended complaint. However, SWAC's amended complaint did not expressly set forth causes of action for breach of contract or fraud. Rather, the amended complaint set forth a single prayer for relief, requesting the trial court to appoint an arbitrator pursuant to R.C. 2711.03(A) and the mandatory arbitration provisions contained in the ADA. Thus, the sole issue before the trial court was whether SWAC had standing to enforce the ADA's arbitration provision.

{¶ 36} In this regard, neither SWAC nor PPG have disputed that they are successors or assignees of, and in privity with, the original parties to the ADA. Thus,

pursuant to the express terms of the ADA, they are bound by the terms of the agreement, including the arbitration provision. *See* ADA ¶ 12.1 ("This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors and assigns, except as otherwise set forth herein"); *see also I Sports v. IMG Worldwide, Inc.*, 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113, ¶ 12 (Nonsignatories to arbitration contracts may be contractually bound by ordinary contract and agency principles), citing *Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir.1995).

{¶ 37} Under these circumstances, we find the trial court had subject-matter jurisdiction to entertain and adjudicate a petition to compel arbitration pursuant to R.C. 2711.03(A). In addition, the record support's SWAC's assertion that, as the assignee of Miller Bros.'s assets, it had standing to pursue the petition based on the rights and interests afforded to it under the ADA. Accordingly, SWAC properly invoked the trial court's jurisdiction to resolve the petition to compel arbitration filed in this particular case.

{¶ 38} With these jurisdictional thresholds being satisfied, the sole issue before the trial court was whether there was a valid and enforceable arbitration agreement, and, if so, whether PPG failed to perform under the written agreement for arbitration. The analysis is confined to the language of R.C. 2711.03(A) and is not concerned with procedural or equitable issues that may or may not impair SWAC's ability to successfully litigate claims before an arbitrator. In short, SWAC's amended complaint did not attempt to invoke the trial court's jurisdiction to address

the justiciability of the potential claims that are related to the parties' contractual relationship under the ADA. Accordingly, we find the trial court exceeded the scope of the discretion afforded to it under R.C. 2711.03 by looking through the petition to compel arbitration to prematurely review whether SWAC had standing to pursue claims that were not before the court.

{¶ 39} Similarly, we are unpersuaded by the trial court's reliance on the doctrine of judicial estoppel. Generally, the doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding inconsistent with a position taken in a prior action." *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, 2002-Ohio-3328, 773 N.E.2d 1081, ¶ 37 (10th Dist.), citing *Bruck Mfg. Co. v. Mason*, 84 Ohio App.3d 398, 616 N.E.2d 1168 (8th Dist.1992). In order to apply the doctrine of judicial estoppel, the proponent must show that his opponent "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. The purpose of judicial estoppel is to preserve the integrity of the courts by preventing a party from abusing the judicial process. *Id.*

{¶ 40} Relevant to this appeal, however, the doctrine of judicial estoppel is a merit-based defense that does not concern the validity or enforceability of the arbitration provision. PPG has not presented any precedent to suggest the doctrine impairs the trial court's jurisdiction to resolve the petition to compel arbitration pursuant to R.C. 2711.03. If SWAC's alleged claims fall within the scope of a valid

and enforceable arbitration provision, the applicability of the doctrine of judicial estoppel is an issue that is appropriate for an arbitrator to resolve.

{¶ 41} Having determined that the trial court prematurely addressed the issue of standing and judicial estoppel, we turn to requirements of R.C. 2711.03 and the evidence supporting SWAC's petition to compel arbitration.

## 2. Scope of the Arbitration Provision

{¶ 42} As discussed, the relevant inquiry under R.C. 2711.03(A) is whether there is a valid and enforceable arbitration agreement, and whether a party is aggrieved by the alleged failure of another to comply with the binding agreement. In this case, SWAC and PPG have not disputed that they are bound by the ADA's arbitration provision that requires the parties to arbitrate "any controversy or claim arising out of or relating to [the ADA]." Moreover, PPG has not disputed that it has not complied with the arbitration provision's requirement to jointly appoint an arbitrator.

{¶ 43} Despite these concessions, however, the trial court ignored the broad language of the arbitration provision and concluded that "the instant dispute is not arbitrable." Noting that it was required to assess the parties' underlying contract when determining whether the arbitration provision is enforceable, the trial court inferred that the potential claims of breach of contract and fraud could not fall within the scope of the arbitration agreement where SWAC lacked standing to pursue said claims. Because the trial court reached a merit-based determination

under R.C. 2711.03(A) that was alternative to its jurisdictional analysis, we must address the trial court's conclusion.

{¶ 44} The question of whether a controversy is arbitrable under the provisions of a contract is a question for a court to decide upon examination of the contract. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 171, 517 N.E.2d 559 (8th Dist.1986). Generally, an arbitration provision should not be denied effect "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). When determining whether the controversy falls within the scope of an arbitration clause, the "'proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Aetna*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003).

{¶ 45} We apply a de novo standard of review to determine whether a controversy is arbitrable under an arbitration provision of a contract. *Pantages v. Becker*, 8th Dist. Cuyahoga No. 106407, 2018-Ohio-3170, ¶ 7.

{¶ 46} After careful consideration, we find the trial court erred in determining that the potential claims referenced in SWAC's complaint are not

arbitrable under the provisions of the ADA. In our view, the standing and judicial estoppel arguments presented in this case were improperly considered by the trial court and had no bearing on whether the arbitration agreement was valid and enforceable. Here, it is clear from the record that SWAC's intention to pursue claims for breach of contract and/or fraud against PPG relate exclusively to its position that PPG's predecessor, Akzo, breached its obligations under the ADA. Undoubtedly, such claims could not be maintained without reference to the underlying contract or relationship at issue and, therefore, fall within the scope of the broad arbitration provision. *See Aetna* at ¶ 18 ("An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'"), quoting *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995). And, without addressing whether the information contained in the bankruptcy court filings may or may not impair SWAC's ability to successfully pursue claims for breach of contract and fraud before an arbitrator in the future, we find the relevant bankruptcy filings did not place the dispute outside the scope of the arbitration agreement. Our conclusion is consistent with the federal court's previous order granting PPG's motion to compel arbitration.

{¶ 47} This court recognizes the unique set of facts presented in this case given the validity of the arbitration provision and the implications of the information disclosed during bankruptcy proceedings. We reiterate that our decision takes no position on the merits of SWAC's potential claims or whether the principles of standing and judicial estoppel will ultimately warrant judgment in

favor of PPG. However, these are issues that must be resolved by the appointed arbitrator.

**{¶ 48}** Following the express language set forth under R.C. 2711.03(A), we sustain SWAC's first assignment of error. The second and third assignments of error are rendered moot.

**{¶ 49}** Judgment reversed and remanded. The trial court is instructed to (1) vacate its order granting summary judgment in favor of PPG; (2) "make an order directing the parties to proceed to arbitration" pursuant to R.C. 2711.03(A); and (3) appoint an arbitrator based on the parties' failure to agree on a jointly-appointed arbitrator as required under the ADA.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
MICHELLE J. SHEEHAN, J., CONCUR