**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Voss v. Quicken Loans, L.L.C.*, Slip Opinion No. 2026-Ohio-531.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-531

VOSS, APPELLEE, *v.* QUICKEN LOANS, L.L.C., ET AL, APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Voss v. Quicken Loans, L.L.C.*, Slip Opinion No. 2026-Ohio-531.]**

*Standing—Class actions—Mortgage-release statute—R.C. 5301.36 comports with Ohio's constitutional standing requirement—Trial court erred in certifying class because a class action was not, at that time, a superior method to adjudicate the controversy—Court of appeals erred by not applying the amended statute, which was in effect at time of its decision and which precluded the class-wide collection of damages that appellee sought—Amended R.C. 5301.36(C) applies retroactively in this case to prohibit the class-wide collection of damages that appellee seeks—Court of appeals' judgment affirmed in part and reversed in part and cause remanded to trial court to decertify the class.*

(No. 2024-0257—Submitted March 13, 2025—Decided February 19, 2026.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-230065, 2024-Ohio-12.

_____

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, and SHANAHAN, JJ., joined. LANZINGER, J., concurred in part and dissented in part, with an opinion. JILL FLAGG LANZINGER, J., of the Ninth District Court of Appeals, sat for DETERS, J.

**HAWKINS, J.**

{¶ 1} In this case, we are asked to answer two questions regarding Ohio's mortgage-release statute, R.C. 5301.36. Under this statute, if a mortgage lender fails to record the release of a mortgage in a timely fashion, the borrower of the unrecorded satisfaction and the owner of the real property can file suit and seek damages of $250. R.C. 5301.36(B), (C). We are asked whether the statute comports with Ohio's constitutional standing requirement.

{¶ 2} We are also asked to address a 2023 amendment to R.C. 5301.36 that prohibited borrowers and property owners from collecting the provision's statutory damages via class action and whether the amended statute should be applied in this case. The amendment was enacted by the General Assembly in January 2023 with an effective date of April 7, 2023. Despite being aware of this amendment, the trial court granted appellee Samuel Voss's motion to certify a class in February 2023, reasoning that the amendment was not yet in effect.

{¶ 3} Our answers are as follows: first, R.C. 5301.36 comports with Ohio's constitutional standing requirement. We therefore agree with the trial court's decision allowing Voss to proceed with his suit and the subsequent decision of the First District Court of Appeals to affirm.

{¶ 4} Second, we conclude that the trial court's decision to certify the class in this case was an error, as a class action was not, at that time, a superior method to adjudicate the controversy. Moreover, we conclude that the court of appeals erred by not applying the amended statute, which was in effect at the time of its

decision and which precluded the class-wide collection of damages that Voss sought. We therefore reverse in part the decision of the court of appeals and remand to the trial court with instructions to decertify the class.

**Background**

{¶ 5} The facts of this case are straightforward. A mortgage that had been attached to a house Voss purchased was paid off at the time of Voss's purchase with proceeds from the sale. That payment triggered a statutory duty requiring appellants, Quicken Loans and Mortgage Electronic Registration Systems, Inc. ("Quicken") to "record a release of the mortgage evidencing the fact of its satisfaction" within 90 days, R.C. 5301.36(B). Although required to record the release by May 5, 2020, Quicken concedes that the release was not recorded until May 27, 2020, which, Quicken emphasizes, was "just 22 days past the statutory deadline."

{¶ 6} The subsequent procedural history is replete with motions, including one to remove the case to the United States District Court for the Southern District of Ohio (Western Division). That motion was granted, but the federal court then remanded the case to state court for want of subject-matter jurisdiction. Two other motions are relevant here: Quicken's motion for summary judgment, which implicates the issue of standing, and Voss's motion to certify a class seeking damages based on violations of R.C. 5301.36(B), which resulted in the trial court's briefly addressing the amendment of R.C. 5301.36 and the issue of retroactivity. The trial court denied the motion for summary judgment, concluding that Voss had standing, and granted the motion to certify the class, stating in a footnote that it would apply R.C. 5301.36 as it existed both at that time (of the court's ruling on the class certification in February 2023) and at the time Voss's action was commenced. The court of appeals affirmed, concluding that Voss had statutory standing and that the trial court had properly decided that amended R.C. 5301.36(C) was not applicable. 2024-Ohio-12, ¶ 3, 21-23 (1st Dist.).

**{¶ 7}** Quicken appealed, and we accepted jurisdiction over two propositions of law:

> 1. A class cannot be certified where the General Assembly has specifically barred classwide recovery of the only relief sought by the class, even when that statute was not yet in effect at the time of certification.
>
> 2. A statute does not and cannot abrogate the need to prove standing merely by specifying an amount of statutory damages, and the need for individualized proof means common issues do not predominate across the statewide class.

*See* 2024-Ohio-1720.

**Analysis**

**{¶ 8}** As with all cases involving statutes, we begin with the language of the statute. R.C. 5301.36, as effective in February 2023 at the time the class was certified, stated: "[T]he mortgagor of the unrecorded satisfaction and the current owner of the real property to which the mortgage pertains may recover, in a civil action, damages of two hundred fifty dollars. This division does not preclude or affect any other legal remedies or damages that may be available to the mortgagor." Former R.C. 5301.36(C), 2014 Am.Sub.H.B. No. 201. This language remains the same in the amended version of R.C. 5301.36, *see* R.C. 5301.36(C)(1), which became effective on April 7, 2023. The amendment added the restriction that "[a] mortgagor or current owner of the real property shall not be eligible to collect the damages described in division (C)(1) of [R.C. 5301.36] via a class action for violations . . . that occurred in calendar year 2020." R.C. 5301.36(C)(2); *see* 2022 Am.Sub.H.B. No. 45.

{¶ 9} Thus, the relevant questions for us are whether the restriction on the eligibility to collect damages via class action for R.C. 5301.36(B) violations that occurred in 2020 applies to this case and whether R.C. 5301.36 confers standing on Voss. We address the second proposition of law first because it could be dispositive. If we conclude that Voss does not have standing, there will be no need to address the implications of amended R.C. 5301.36(C).

*Standing*

{¶ 10} The Ohio Constitution vests this court and inferior courts with the judicial power. Ohio Const., art. IV, § 1. This grant of the judicial power allows us to decide "specific cases" between conflicting parties. *See Stanton v. State Tax Comm.*, 114 Ohio St. 658, 671-672 (1926). Thus, we may only "decide actual controversies between parties legitimately affected by specific facts," *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). In this way, the Ohio Constitution limits our jurisdiction to cases in which parties have standing. *See State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 10; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973).

{¶ 11} To have standing, a party "must suffer particular harm that is different from some general harm suffered by the public at large." *Martens* at ¶ 12. "Traditional standing principles require litigants to show, at a minimum, that they have suffered '(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.'" *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7, quoting *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22. This standard ensures that parties "have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case," *id.*

{¶ 12} Relying on the United States Supreme Court decisions in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion, L.L.C. v. Ramirez*, 594 U.S. 413 (2021), Quicken argues that Voss fails to meet the standing requirement

because he has failed to establish that he suffered an actual injury from the failure of Quicken to timely record the release of mortgage. Voss counters that he does not need to demonstrate an actual injury because the legislature has specifically granted him statutory standing under R.C. 5301.36 to remedy the legal injury that he suffered.

{¶ 13} We have recognized in the past that the legislature may confer standing by statute. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986). That authority, however, is not unlimited. Because standing is a constitutional requirement, the legislature may not authorize the judiciary to adjudicate matters that extend beyond the traditional bounds of the judicial power. *See Maloney v. Rhodes*, 45 Ohio St.2d 319, 337 (1976) (Corrigan, J., concurring in part) ("The Constitution fixes limits to the exercise of legislative authority, and prescribes the orbit within which it must move").

{¶ 14} However, in defining the boundaries of the constitutional standing requirement, "we are not bound to walk in lockstep with the federal courts when it comes to our interpretation of the Ohio Constitution." *State v. Smith*, 2020-Ohio-4441, ¶ 28. Thus, we decline Quicken's invitation to simply deem United States Supreme Court precedent on the meaning of the standing requirement in the United States Constitution as controlling of our interpretation of Ohio's standing requirement.

{¶ 15} Our precedent has recognized that within certain common-law causes of action, an action for damages could be maintained for a legal injury alone, without proof of particularized harm. For example, as far back as 1832, we explained that an action for trespass could be maintained for entry upon land alone, without the showing of any actual damage. *Cooper v. Hall*, 5 Ohio 320, 322 (1832); *see also Tootle v. Clifton*, 22 Ohio St. 247, 250-251 (1871); Woolhandler & Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich.L.Rev. 689, 694 (2004) (explaining a longstanding tradition that "legislatures may create statutory duties or

'entitlements' owed to private persons; these entitlements can be treated as private rights for standing purposes, and the legislature may permit individuals to seek compensation for losses caused by their breach" [footnote omitted]).

{¶ 16} In light of this historical understanding, we have little difficulty in concluding that in a case such as this in which a plaintiff has suffered a legal injury through the unlawful failure of another party to timely record a mortgage release, the legislature may by statute authorize a plaintiff to sue for the legal injury that he has suffered even in the absence of actual harm.

{¶ 17} Here, the legislature has imposed a legal duty on Quicken to record a release of mortgage within 90 days, created a right in Voss to have the release recorded, and made the duty and the right enforceable by creating a right in Voss to recover $250 if Quicken fails to fulfill its duty. We find nothing in this procedure that is violative of the standing requirement of the Ohio Constitution.

{¶ 18} Quicken also argues that even if the legislature had the authority to allow a lawsuit based purely on a legal injury, it has not done so here. We disagree. The statute specifically authorizes a mortgagor and current owner of the property to recover $250 in statutory damages and provides that such recovery "does not preclude or affect any other legal remedies or damages that may be available," R.C. 5301.36(C)(2). On plain reading, the statute makes the $250 remedy available irrespective of any showing of actual harm. *See Radatz v. Fed. Natl. Mtge. Assn.*, 2016-Ohio-1137, ¶ 26 (finding that the $250 payment required by R.C. 5301.36 "is not tied to any actual losses suffered by an aggrieved individual").

{¶ 19} Thus, with respect to the second proposition of law, we conclude that Voss has met Ohio's constitutional standing requirement. We decline to address the second part of the second proposition of law—whether common issues predominate across the statewide class—because given our disposition of the next proposition of law, discussion of this issue is not necessary to resolve the case.

*Retroactivity*

**{¶ 20}** According to the expert opinion included in appellants' supplement to their brief, the outbreak of the COVID-19 pandemic in March 2020 negatively affected the ability of Ohio's 88 county recorder's offices to function. Precautions that were intended to slow the spread of the disease—like reduced in-office staffing, quarantine periods, and outright office closures—also slowed the process of recording documents submitted by participants in real-estate transactions.

**{¶ 21}** Amended R.C. 5301.36(C) expressly prohibits the collection of damages via class-action lawsuit for violations of R.C. 5301.36(B) that occurred in the year 2020, before the amended statute went into effect. Because of this rearward-facing component, it is necessary to determine whether amended R.C. 5301.36(C) is an impermissibly retroactive law. To be sure, the General Assembly has no power to pass retroactive laws. Ohio Const., art. II, § 28. We have explained, however, that "retroactivity itself is not always forbidden," *Bielat v. Bielat*, 2000-Ohio-451, ¶ 9. To determine whether the retroactive application of a statute is forbidden, we have developed a two-part test. *State v. Williams*, 2011-Ohio-3374, ¶ 8, citing *Hyle v. Porter*, 2008-Ohio-542, ¶ 7-9. Initially, we ask whether the General Assembly expressly made the statute retroactive. *Id.* at ¶ 8, citing *Hyle* at ¶ 8; *see Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100 (1988), paragraph one of the syllabus, *superseded by statute on other grounds as stated in Hannah v. Dayton Power & Light Co.*, 1998-Ohio-408, ¶ 8. Here, it is plain that the amended statute is retroactive; there is no other plausible conclusion. The amended version of R.C. 5301.36, which became effective in April 2023, patently applies only to causes of action arising via R.C. 5301.36(C) in 2020. The statute states that plaintiffs otherwise eligible to collect damages for a violation of R.C. 5301.36(B) "shall not be eligible to collect . . . via a class action for violations . . . that occurred in calendar year 2020." R.C. 5301.36(C)(2). That language is obviously intended to apply retroactively; it took effect in 2023 and applies only to R.C. 5301.36(B) violations that took place in 2020.

{¶ 22} Next, we must determine whether the statutory provisions are substantive or remedial, because retroactive remedial statutes are not unconstitutional. *Williams* at ¶ 8; *Hyle* at ¶ 8; *Pratte v. Stewart*, 2010-Ohio-1860, ¶ 37 ("A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively."); *see also State v. Consilio*, 2007-Ohio-4163, ¶ 10. "It is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right. Remedial laws, however, are those affecting only the remedy provided . . . ." (Citation omitted.) *Pratte* at ¶ 37; *see Williams* at ¶ 9; *State v. Jarvis*, 2021-Ohio-3712, ¶ 9.

{¶ 23} We have no difficulty concluding that the challenged provision of amended R.C. 5301.36(C) is remedial. The amended statute does not impair or take away a vested right. The amended statute does not affect an accrued substantive right. The amended statute does not impose a new or additional burden, duty, obligation, or liability as to a past transaction. And the amended statute does not create a new right. The most important factor that influences our decision is that although the amended statute prohibits class actions to collect damages for statutory violations that occurred in 2020, that is all it affects. It does not prohibit other causes of action based on R.C. 5301.36(B) violations that occurred in 2020. It does not prevent any potential plaintiff—that is, any person whose property was the subject of a R.C. 5301.36(B) violation—from pursuing a remedy. It doesn't even restrict all class actions. Moreover, potential plaintiffs have other unspecified remedies available to them. The only thing they cannot do is collect the $250 in damages described in R.C. 5301.36 via a class action for violations of R.C. 5301.36(B) that occurred in 2020. This limited restriction is not substantive—it is remedial. And in this case, the retroactive provision affects only a remedy sought to be collected via class action; it does not otherwise change or eliminate the

remedy provided by the statute. *See Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 28 ("Litigants have no right to a particular remedy or procedure, and nothing prohibits the legislature from altering or modifying methods, procedures or remedies as it sees fit.").

{¶ 24} When this case was filed and when the trial court issued its decision, the amended version of R.C. 5301.36(C) was not in effect. This means, obviously, that at those times, there was no prohibition against filing a class action for violations of R.C. 5301.36(B) that occurred in 2020. Article II, Section 28 of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." The trial court relied on this to summarily conclude that applying amended R.C. 5301.36(C) to this case before the amended statute's effective date would be retroactive, which it noted "is not permitted." It therefore applied "the law as [it] was written when this action was commenced and [as it was] written" at the time of the trial court's decision. Hamilton C.P. No. A2002899, 2023 WL 1883124, *1, fn. 2 (Feb. 8, 2023).

{¶ 25} When the appellate court issued its decision, however, amended R.C. 5301.36(C) *was* in effect. The appellate court acknowledged as much. 2024-Ohio-12 at ¶ 19 (1st Dist.). But rather than applying the law in front of it, the appellate court applied the law that was in effect at the time the trial court certified the class. *Id.* at ¶ 21. Because the appellate court applied the previous version of the statute, it did not engage with the text of amended R.C. 5301.36(C) to determine whether the amendments to the statute created a remedial or a substantive change in the law. The effect of that distinction is key—remedial "laws 'providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws,'" *State v. Brooks*, 2022-Ohio-2478, ¶ 27 (DeWine, J., concurring in judgment only), quoting *State ex rel. Holdridge v. Indus. Comm.*, 11 Ohio St.2d 175 (1967), paragraph one of the syllabus. As we explained above, amended R.C. 5301.36(C) is remedial in nature, so it applies to all

proceedings after its effective date of April 7, 2023. The appellate-court proceedings below took place after that date, so the application of the prior version of R.C. 5301.36(C) by the court of appeals was an error.

{¶ 26} We also view the trial court's decision to certify the class in this case as an error. Before it certified the class, the trial court should have considered the future applicability of amended R.C. 5301.36(C). Specifically, the trial court should have considered whether a class action was a "superior method" to adjudicate the controversy when the collection of damages via a class action would be prohibited by the amended statute by the time damages could be assessed and collected. *See* Civ.R. 23(B)(3)(d) ("likely difficulties in managing a class action" are pertinent to a court determining whether a class action is a superior method to adjudicate a controversy). The prohibition on a class-wide collection of damages under amended R.C. 5301.36(C) was imminent, so a class action did not at that time "'justify the expenditure of judicial time and energy,'" *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 2006-Ohio-5339, ¶ 28, quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984). The trial court should have denied class certification.

*We are unpersuaded by the concurring-and-dissenting opinion*

{¶ 27} We must turn to the concurring-and-dissenting opinion's argument that "R.C. 5301.36(C)(2) is invalid and of no force and effect." Concurring-and-dissenting opinion, ¶ 35. To reach that conclusion, the opinion relies on *Rockey v. 84 Lumber Co.*, 66 Ohio St.3d 221 (1993), in which we concluded that Ohio's Civil Rules "must control over subsequently enacted inconsistent statutes purporting to govern procedural matters," *84 Lumber* at paragraph two of the syllabus.

{¶ 28} In *84 Lumber*, a since-repealed tort statute, R.C. 2309.01(B)(2), prohibited plaintiffs from including in their complaints "the specific amount of monetary damages where the damages sought are in excess of $25,000." *Id.* at 223. That statute, we explained, was "in *direct conflict* with Civ.R. 8(A)," which—at

that time—required "all complainants to specify in the complaint the actual amount of damages sought." (Emphasis added.) *Id.* at 224. It was therefore impossible for a complaint to comply with R.C. 2309.01(B)(2) without automatically violating Civ.R. 8(A). Emphasizing this court's sole authority to promulgate rules of practice and procedure under Article IV, Section 5(B) of the Ohio Constitution, we concluded that the Civil Rules—being a product of our rule-making power—controlled over R.C. 2309.01(B)(2). *Id.* at 224-225.

{¶ 29} According to the concurring-and-dissenting opinion, because Civ.R. 23 makes class-action lawsuits available to the public, R.C. 5301.36(C)(2)—which slightly limits the availability of class actions—is invalid and of no force and effect.

{¶ 30} Civ.R. 23 is, unlike Civ.R. 8(A), written in permissive conditional language that makes class actions available only upon the satisfaction of certain criteria. *Compare* Civ.R. 23(A) ("One or more members of a class *may* sue . . . .") and Civ.R. 23(B) ("A class action *may* be maintained . . . .") *with* Civ.R. 8(A) (a complaint "*shall* contain"). (Emphasis added.) Class actions are, after all, the "exception to the general rule that litigation is conducted by and on behalf of the named parties only." *Cullen v. State Farm Mut. Auto Ins. Co.*, 2013-Ohio-4733, ¶ 2. Civ.R. 23, then, is not automatically violated by R.C. 5301.36(C)(2) because plaintiffs are not inherently entitled to class actions. Moreover, the limit on class actions imposed by R.C. 5301.36(C)(2) narrowly applies only to plaintiffs seeking class-wide recovery for mortgage-release violations that occurred in 2020. R.C. 5301.36(C)(2) does not affect a broad class of complaints, while R.C. 2309.01(B)(2)—which applied to every tort action seeking more than $25,000—did. We therefore conclude that the limited prohibition on class actions imposed here by R.C. 5301.36(C)(2) is not "in direct conflict," *84 Lumber* at 224, with Civ.R. 23.

*Applicability*

**{¶ 31}** Having determined that the statute is not unconstitutionally retroactive, we must now determine whether it applies to a class action that was filed and certified before the effective date of the statute. We conclude that the amended statute, at this time, bars the collection of damages via a class action for violations of R.C. 5301.36(B) that occurred in 2020. Our conclusion might be different if an award of damages had already been assessed before the effective date of the amended statute. Our conclusion would certainly be different if damages had already been paid before the effective date of the amended statute. But, in this case, damages have not been assessed, let alone paid. The only thing that happened before the effective date of the amended statute was the certification of the class. But there is no entitlement to a class action, which "is an exception to the general rule that litigation is conducted by and on behalf of the named parties only," *Cullen* at ¶ 2; *see Amato v. Gen. Motors Corp.*, 67 Ohio St.2d 253, 256, (1981) ("A class action is not a cause of action; rather, it is a procedural mechanism . . . ."), *overruled in part on other grounds by Polikoff v. Adam*, 67 Ohio St.3d 100 (1993).

**{¶ 32}** In this case, damages have yet to be collected. But the prohibition against collecting R.C. 5301.36 damages via class action is now in effect and prevents their collection. *See Holdridge*, 11 Ohio St.2d 175, at paragraph one of the syllabus (remedial laws "providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws"). As explained above, amended R.C. 5301.36(C) is remedial because it does not prevent a remedy—it prevents only the collection of the statutory remedy via a class action. Because the collection of damages in this case can happen only prospectively—that is, after the effective date of amended R.C. 5301.36(C)—we conclude that the prohibition is allowable and applies to prevent the ongoing viability of the class. Accordingly, the class must be decertified because it is not possible for the class to collect the statutory remedy.

{¶ 33} Accordingly, we reverse the judgment of the court of appeals affirming the trial court's class certification.

**Conclusion**

{¶ 34} We affirm in part and reverse in part the judgment of the First District Court of Appeals, and we remand to the trial court with instructions to decertify the class. Amended R.C. 5301.36(C) applies retroactively in this case to prohibit the class-wide collection of damages that appellee seeks.

Judgment affirmed in part<br>
and reversed in part<br>
and cause remanded.

---

**LANZINGER, J., concurring in part and dissenting in part.**

{¶ 35} I respectfully concur in part and dissent in part. I agree with the majority's conclusion that R.C. 5301.36 confers statutory standing and that appellee, Samuel Voss, did not need to show that he suffered an injury in fact. I disagree with the majority's conclusion that the court of appeals erred by failing to apply the amended version of R.C. 5301.36 and with its decision to then analyze and apply the amended version in the first instance. I would neither analyze nor apply the amended statute, because the lower courts have not done so. *See Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 22 (declining to address issues "before the lower courts have the opportunity to address them in the first instance"). But because the majority analyzes and applies the amended statute, I am compelled to address the validity of R.C. 5301.36(C)(2). For the following reasons, I would hold that the court of appeals did not err by affirming the trial court's decision to certify the class, because R.C. 5301.36(C)(2) is invalid and of no force and effect.

{¶ 36} Civ.R. 23 has been a part of the Ohio Rules of Civil Procedure since their adoption in 1970. *See* 22 Ohio St. 2d 1, 28 (front pages). "The class action is

an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 62 (1990). The purpose of a class action is to simplify the resolution of disputes and to promote judicial economy. *See State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 2006-Ohio-5339, ¶ 42; *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 240 (1984) (Holmes, J., dissenting) ("Judicial economy [is] one of the basic purposes for the creation of class actions . . . ."). As the United States Supreme Court has explained:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997), quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

{¶ 37} In response to the COVID-19 pandemic, the executive branch ordered a statewide shutdown. According to the expert opinion included in appellants' supplement to their brief, the statewide shutdown negatively affected the ability of Ohio's 88 county recorder's offices to function. According to appellants, Quicken Loans, L.L.C., and Mortgage Electronic Registration Systems, Inc., this was the cause of the 22-day delay in recording the release of satisfaction in this case.

{¶ 38} In an apparent attempt to solve a problem that the statewide shutdown created, the legislature amended R.C. 5301.36(C) to prohibit plaintiffs

from collecting damages via class actions for violations of R.C. 5301.36(B) that occurred in 2020. R.C. 5301.36(C)(2). But this prohibition is inconsistent with Civ.R. 23, which allows litigants to pursue a class action so long as certain requirements are met. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 396-406 (2010) (acknowledging that a state law prohibiting class actions in certain suits contradicted Fed.R.Civ.P. 23); *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201 (1987) ("Because Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23, we have recognized that 'federal authority is an appropriate aid to interpretation of the Ohio rule.'").

{¶ 39} As this court has stated, "[t]he Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters." *Rockey v. 84 Lumber Co.*, 66 Ohio St.3d 221 (1993), paragraph two of the syllabus. R.C. 5301.36(C)(2) purports to govern procedural matters by prohibiting class actions for statutory violations that occurred in 2020. The majority acknowledges that R.C. 5301.36(C)(2) is procedural in nature, not substantive, but it does not analyze whether R.C. 5301.36(C)(2) is inconsistent with Civ.R. 23 (an issue Voss raised in his brief). Based on this court's precedent, I would hold that R.C. 5301.36(C)(2)'s prohibition of class actions for statutory violations that occurred in 2020 is inconsistent with Civ.R. 23 and is of no force and effect. *See Rockey* at paragraph one of the syllabus.

{¶ 40} I conclude by emphasizing the inherently problematic nature of legislation that attempts to usurp this court's constitutional authority to promulgate the Rules of Civil Procedure, as well as the slippery slope created by upholding R.C. 5301.36(C)(2) as valid. Here, upholding R.C. 5301.36(C)(2) encourages the legislature, in response to the next crisis (real or perceived), to enact retroactive laws that prohibit class actions for other claims by characterizing those laws as

procedural. In other words, it encourages the legislature to usurp this court's constitutional rulemaking power. This court should avoid setting this ill-fated precedent.

{¶ 41} For the foregoing reasons, I respectfully concur in part and dissent in part.

––––––––––––––––

Markovits, Stock & DeMarco, L.L.C., W.B. Markovits, Terence R. Coates, Justin C. Walker, and Dylan J. Gould; and Wolterman Law Office, L.P.A., and Matthew C. Metzger, for appellee.

Goodwin Procter, L.L.P., and William M. Jay; Manley Burke, L.P.A., and Timothy M. Burke; Frost Brown Todd, L.L.P., and Matthew C. Blickensderfer, and Ashbrook Byrne Kresge, L.L.C., and Benjamin M. Flowers, for appellants.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor General, urging affirmance for amicus curiae Attorney General Dave Yost.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Brian Ruschel, urging affirmance for amici curiae Dworken & Bernstein Co., L.P.A., and Brian Ruschel.

Jennifer Martinez Atzberger, Brianna L. Stephan, John E. Schrider Jr., and Miriam H. Sheline, urging affirmance for amici curiae Advocates for Basic Legal Equality, Inc., Legal Aid Society of Southwest Ohio, L.L.C., and Pro Seniors, Inc.

Tabitha M. Woodruff and Sarah Ortlip-Sommers, urging affirmance for amici curiae Public Justice, Berkeley Center for Consumer Law and Economic Justice, and National Consumer Law Center.

Murray & Murray Co., L.P.A., and Margaret M. Murray, urging affirmance for amicus curiae Ohio Association for Justice.

––––––––––––––––